**Edward E. GRIFFIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 11A01–0101–CR–2.**

Court of Appeals of Indiana.

Oct. 11, 2001.

William G. Brown, Brown & Somheil, Brazil, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Edward E. Griffin was convicted of dealing in a controlled substance [1] as a Class B felony. He now appeals, raising several issues for review, one of which we find dispositive: whether the trial court erred in denying Griffin's motion to dismiss the charges against him where a plea agreement in another case included a promise by the State not to file charges in the instant case.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On March 16, 1998, Trooper Daryl A. Jones of the Indiana State Police conducted an investigation in which a confidential informant purchased methamphetamine from Griffin. The informant wore a wire transmitter, and the transaction was recorded. Around this same time period, Griffin was working as a confidential informant in drug cases for Jones.

In May 1999, Griffin and the Clay County prosecutor entered into a plea agreement for cause number 11C01–9707–CF–59, ("CF–59 charge") in which Griffin agreed to plead guilty to possession of a controlled substance in exchange for a specially-arranged sentence. The agreement was signed by the prosecutor "per 6–1–99 letter and 5–24–99 letter." *Record* at 117. The "6–1–99" letter referenced in the plea agreement was written by the prosecutor to Griffin's counsel and stated in part:

> Second, I got to thinking what do I do if Ed Griffin refused to testify in the cases he is working on with Daryl Jones. Then the more I thought about it, I realized that there is no written agreement saying I would not file the two new Indiana State Police cases. I think these things are mutually understood between us, but shouldn't we put them down in writing. . . .

*Id.* Eventually, the prosecutor determined that Griffin had not performed his obligation under the agreement, and in February 2000, Griffin was charged with dealing and possessing a controlled substance in cause number 11C01–0003–CF–

---

1. *See* IC 35–48–4–2.

24 ("CF–24 charges") for the March 1998 controlled buy.

Before trial, Griffin moved the court to dismiss the CF–24 charges based on the prosecutor's promise in the plea agreement on the CF–59 charge to not bring the CF–24 charges. After a hearing, the trial court denied Griffin's motion.

Griffin's case on the CF–24 charges was tried to a jury, which found him guilty. The trial court entered conviction on one count of dealing in a controlled substance. Griffin now appeals.

## DISCUSSION AND DECISION

Griffin argues that the trial court erred in denying his motion to dismiss the case against him because the plea agreement on the CF–59 charge prevented the State from pursuing the instant charges. As Griffin had the burden of proving all facts necessary to his motion to dismiss, the denial of his motion was a negative judgment which we will reverse only if the evidence is without conflict and leads inescapably to the conclusion that Griffin is entitled to a dismissal. *See Wright v. State,* 700 N.E.2d 1153, 1155 (Ind.Ct.App. 1998).

"A plea agreement is a contract, 'an explicit agreement between the State and defendant which is binding upon both parties when accepted by the trial court.'" *Smith v. State,* 717 N.E.2d 239, 241 (Ind. Ct.App.1999) (quoting *State ex rel. Goldsmith v. Marion County Superior Court,* 275 Ind. 545, 552, 419 N.E.2d 109, 114 (1981)). Because a plea agreement is a contract, the principles of contract law can provide guidance in the consideration of plea agreements. *Wright,* 700 N.E.2d at 1155. The primary goal of contract interpretation is to give effect to the parties' intent. *Id.* When the terms of a contract are clear and unambiguous, they are conclusive of that intent, and the court will not construe the contract or look to extrinsic evidence. *Id.* Rather, we will merely apply the contractual provisions. *Id.* Terms of a contract are not ambiguous merely because a controversy exists between the parties concerning the proper interpretation of terms. *Id.* Instead, ambiguity will be found in a contract only if reasonable people would find the contract subject to more than one construction. *Id.*

In order to avoid mistakes and misrepresentations with regard to such a binding agreement, counsel should reduce to writing *all* terms of a plea agreement. *Page v. State,* 706 N.E.2d 230, 231 (Ind.Ct. App.1999), *trans. denied* (emphasis added). *See also* IC 35–35–3–3(a) ("No plea agreement may be made by the prosecuting attorney to a court on a felony charge except: (1) in writing; and (2) before the defendant enters a plea of guilty.").

In *Wright,* 700 N.E.2d at 1153, the defendant was charged with two counts of theft in one case and two counts of dealing in cocaine in a separate case. The State and the defendant entered into a plea agreement in the theft case whereby the defendant would plead guilty to one count of theft in exchange for the State's dismissal of the other count of theft and the State's agreement "not to file or proceed with any other charges of which they have knowledge." *Id.* at 1154. The court accepted this plea agreement, and the defendant served his sentence. The defendant then moved to dismiss the dealing in cocaine case, citing the plea agreement. At the hearing on the defendant's motion, the prosecutor testified that he was aware of the dealing case at the time he signed the agreement, but that he did not intend to dismiss any pending charges by entering into the agreement. The trial court denied the defendant's motion to dismiss, finding that it was not the parties' intent to dis-

pose of the dealing charges by the plea agreement. *Id.*

On appeal, the State argued that the plea agreement was ambiguous, and therefore the trial court properly resorted to extrinsic evidence to determine the agreement's meaning. We disagree that reasonable people could differ on the meaning of the State's promise not to file or proceed with any charges of which it had knowledge. Accordingly, because the language of the agreement was clear, the trial court erred in relying on extrinsic evidence to determine the parties' intent. Instead, we observed: "If the language did not accurately reflect the State's intent, then it was the State's obligation to correct the language or not sign the document, as it became binding on all parties as written upon its acceptance by the court." *Id.* at 1156. Because the defendant presented proof that the prosecutor knew about the dealing charges when he signed the agreement, we held that the defendant met his burden of proving he was entitled to dismissal of the charges. *Id.*

■ Similarly, here, the clear language of the written plea agreement requires, albeit inferentially, only that Griffin testify in two of Trooper Jones's cases. At the hearing, Trooper Jones and the prosecutor testified that Griffin's obligation under the agreement was more extensive than merely testifying. Both men testified that the plea agreement required Griffin to make three buys each from two targets, suspected drug dealers, and then to cooperate with the prosecution of the targets, including giving testimony at the trials. However, nowhere is this obligation identified in the plea agreement or the correspondence between the parties that was incorporated into the plea agreement by reference. Further, there is no ambiguity in the agreement that would allow a court to look to extrinsic evidence of the parties' intent.

Rather, this court is bound by the contents of the agreement, which admit of no interpretation other than that Griffin's testimony was required. The Record suggests that the prosecutor drafted the plea agreement. If the agreement as written did not reflect the prosecutor's intent, it was his obligation to correct it.

Nonetheless, the State argues that no evidence links the CF–59 plea agreement and the CF–24 charges. However, the testimony at the dismissal hearing established that the CF–24 charges were the "two new Indiana State Police cases" referred to in the prosecutor's June 1, 1999 letter. *See Record* at 117. Those charges were based on investigations led by Trooper Jones of the Indiana State Police. Further, although the investigation was completed in March 1998, the charges were not filed until the prosecutor determined that Griffin had not fulfilled his obligations under the CF–59 plea agreement, almost two years later. The State's argument that the cases are not related is without merit.

■ The State also maintains that the trial court did not err in denying Griffin's motion to dismiss because Griffin did not fulfill his obligation under the agreement; however, the written plea agreement refers only to Griffin's potential to refuse to testify. As the State never called upon Griffin to testify, the Record is void of any failure of consideration on Griffin's part.

This case presents a textbook example of what this court cautioned against in *Richardson v. State,* 456 N.E.2d 1063, 1067 (Ind.Ct.App.1983), where we stated,

> Failure to reduce an agreement to writing, however, can lead to misapprehension, mistake, or even calculated misrepresentation. Thus, in the interests of justice, the terms of such agreements should be placed of record before a sen-

tence is imposed on the one pleading guilty. It is incumbent on both parties to see that the agreement's terms are recorded accurately.

(quotations and citations omitted). Here, Griffin is benefiting from the prosecutor's decision to enter a written plea agreement that contained no terms beyond requiring Griffin's testimony based on an "understanding" between the parties. Griffin has not failed to fulfill his obligations under the clear language of the agreement and is entitled to a dismissal of these charges.

Reversed.

BAILEY, J., and BROOK, J., concur.