John L. BAKER, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 02A04–0107–PC–320.

Court of Appeals of Indiana.

May 16, 2002.

John L. Baker, Fort Wayne, Indiana, Appellant pro se.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

John L. Baker appeals from the post-conviction court's denial of his *pro se* petition for post-conviction relief. Upon appeal, he seeks review upon the following grounds, which we renumber and restate as:

(1) whether his guilty plea was entered into knowingly, voluntarily, and intelligently;

(2) whether the trial court followed the guilty plea agreement in sentencing; and

(3) whether he received effective assistance of counsel.[1]

We affirm in part and reverse in part.[2]

Baker entered a plea of guilty to Sexual Battery, a Class D felony,[3] and Battery by

---

1. Baker also asserts that the trial court erred in denying him a hearing on his petition for post-conviction relief. While he chose to present it as a separate issue, we believe that it is more appropriate to address this issue in conjunction with his ineffective assistance of counsel claim in this appeal.

2. The State seeks waiver of Baker's claims because he failed to include a copy of the transcript of the guilty plea and sentencing hearings in the appendix. From our review of the documents contained in the appendix, it is clear that the transcripts were requested by Baker, but it does not appear that Baker actually received the transcripts. We note the order of the trial court, from August 13, 2001, contained in the appendix at page 100, which found that Baker had not received a copy of the Clerk's Record as requested and that the Clerk of Allen Courts was to provide a copy to Baker. This court issued a Writ of Certiorari requesting that a copy of the transcripts be sent to this court to aid in our review of this appeal.

3. Ind.Code § 35–42–4–8 (Burns Code Ed. Repl.1998).

Body Waste, a Class D felony,[4] on June 22, 2000. In exchange for his guilty plea, the State agreed to dismiss charges for Criminal Deviate Conduct, a Class B felony,[5] and Battery, a Class A misdemeanor.[6] Baker was sentenced to three years confinement, with two years executed, for Sexual Battery, and two years confinement for Battery by Body Waste. These sentences were to be served consecutively. On November 6, 2000, he filed a petition for post-conviction relief. Baker filed several motions for a hearing upon his petition, which were denied, and Baker was ordered to submit his case by affidavit. The post-conviction court denied Baker's petition for post-conviction relief on May 30, 2001.

██ A post-conviction proceeding does not provide the convicted with an opportunity for a super-appeal. *Ford v. State*, 755 N.E.2d 1138, 1141 (Ind.Ct.App. 2001), *trans. denied*. Following a denial of post-conviction relief, a petitioner must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision that is opposite that reached by the post-conviction court. *Id.* We will accept the post-conviction court's findings of fact unless clearly erroneous, but we do not defer to the court's conclusions of law. *State v. Holmes*, 728 N.E.2d 164, 169 (Ind. 2000), *cert. denied* 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001).

I

*Knowing, Voluntary, and Intelligent Plea*

██ Upon review of a guilty plea, we look at all evidence which was before the post-conviction court. *Hendrickson v. State*, 660 N.E.2d 1068, 1072 (Ind.Ct.App.

1996), *trans. denied.* We will not reverse the post-conviction court's determination if the evidence supports that the guilty plea was knowing, voluntary, and intelligent. *Id.* When a defendant can show that he was coerced or misled into pleading guilty by the judge, prosecutor, or defense counsel, he presents a colorable claim that his plea was not voluntary. *Trueblood v. State*, 715 N.E.2d 1242, 1263 (Ind.1999), *cert. denied* 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000).

Baker claims that his guilty plea was not knowingly, voluntarily, and intelligently entered into. First he alleges that he was taking medication for a mental disorder and was emotionally distressed over the death of his father, so as to taint the plea. We address this assertion separately and apart from his second claim, which charges that his attorney coerced the plea by attempting to extract a payment of $10,000 in return for expediting the representation. The latter claim was presented as an ineffective assistance of counsel claim, and will be addressed in that light. In addition, it will also be analyzed as whether it rendered the plea involuntary under this section.

### A. Use of Medication and Mental Distress

██ Our review of the transcript reveals that Baker informed the court of his mental illness and that he was taking medication, under a doctor's care, to control the disorder. Baker, upon questioning by the court, agreed that he understood the proceedings and that he entered the plea of his own voluntary act. While he did answer many of the questions by respond-

---

**4.** Ind.Code § 35–42–2–6 (Burns Code Ed. Repl.1998).

**5.** Ind.Code § 35–42–4–2 (Burns Code Ed. Repl.1998).

**6.** Ind.Code § 35–42–2–1 (Burns Code Ed. Supp.2001).

ing "yes sir" or "no sir," that in and of itself is not unusual for this type of proceeding and does not give cause for alarm. *See Middleton v. State*, 567 N.E.2d 141 (Ind.Ct.App.1991), *trans. denied.*

Based upon our review of the transcript of the guilty plea hearing, we do not see any evidence that Baker's use of medication and the passing of his father affected him such that he did not knowingly, intelligently, and voluntarily enter his guilty plea. Contrary to his assertion that he could not understand because he was under the influence of medications, his answers reveal that he had been taking the medication for ten years under the guidance of a doctor, allowing him to function appropriately and understand the events in which he took part. He also had the opportunity to inform the trial court of any distress that he was suffering from the passing of his father, but he did not. Further, he stated that he was competent to go ahead with the trial. In fact, Baker did not even inform the trial court that his father had passed away. Also, none of the responses made by Baker should have raised concern by the trial court that Baker did not understand because the responses were logical and appropriately answered the questions posed by the trial court.

### B. Coercion by Attorney

■ Baker also claims that his counsel refused to "expedite representation" of his case unless Baker paid to him a $10,000 fee or accepted the plea agreement. Appellant's Brief at 19. We assume that Baker, in stating under oath that counsel requested $10,000 and could "beat the case," believed that his counsel would not zealously pursue representation of him in this case. Appendix at 38. While these are mere allegations, they were made under oath in affidavit form and do raise concerns. However, while this assertion

does raise concern, it seems implausible given that counsel was performing his duties as the public defender and because Baker made no such allegation when addressed by the trial court regarding his representation.

At the guilty plea hearing, the following colloquy took place between the trial court and Baker:

> "[Trial Court]: Has anyone forced or threatened or placed you or anyone else in fear to induce you to plead guilty to these charges?
>
> [Baker]: No sir.
>
> [Trial Court]: Do you feel that your plea of guilty is your own free and voluntary act?
>
> [Baker]: Yes sir.
>
> [Trial Court]: Are you satisfied with your attorney, Mr. Nimmo, and do you feel that he is properly representing you?
>
> [Baker]: Yes sir."

Transcript of Guilty Plea Hearing at 13.

These answers given by Baker at the guilty plea hearing negate his later assertion that he pleaded guilty because he was coerced into pleading guilty by his counsel. *See Johnson v. State*, 734 N.E.2d 242, 245 (Ind.2000) (holding that on a similar set of facts, defendant's answers to the trial court's questions belied his later assertion that he only pleaded guilty because he was pressured by counsel). Baker has not presented a claim which warrants relief by determining that his plea was not voluntary.

## II

### Sentencing According to Plea Agreement

■ Baker contends that the trial court erred in not sentencing him in accordance with the plea agreement. He also claims

that the trial court erred in ordering him to pay a fee for his public defender.

■ Plea agreements are contracts which are entered into between the State and defendant and are binding upon both parties when accepted by the trial court. *Griffin v. State,* 756 N.E.2d 572, 574 (Ind. Ct.App.2001), *reh'g denied, trans. denied.* Once a trial court accepts a plea agreement, it is bound by its terms. *Reffett v. State,* 571 N.E.2d 1227, 1229 (Ind.1991). The principles of contract law provide guidance in the consideration of plea agreements. *Griffin,* 756 N.E.2d at 574. In interpreting a contract, our primary goal is to give effect to the parties' intent. *Id.* When the terms of a contract are clear and unambiguous, they are conclusive of that intent, and we will not construe the contract or look to extrinsic evidence. *Id.* Ambiguity is found in the terms of the contract only if reasonable people would find the contract subject to more than one interpretation, not merely because a controversy exists between the parties concerning proper interpretation. *Id.*

Baker asserts that the trial court, according to the plea agreement it had accepted, was required to sentence him to work release or home detention through the community correction's program if he was eligible for either. A review of the Notice of Recommendation by State on Plea of Guilty ("Notice"), which was signed by Baker, reveals that Baker was to serve the executed portion of his sentence and then be placed on active adult probation for one year. The Notice also provided, "The State has no objection to [Baker] serving the executed portion of his/her sentence in Work Release or direct placement in Community Corrections for assessment, education and treatment, *if el-*

*igible.*" Appendix at 26 (emphasis in original).

Although Baker asserts that this language requires the trial court to determine if he was eligible for work release or home detention, the agreed upon language says only that the State has no objection to the trial court making that determination. The language does not guarantee that Baker would be placed in work release or home detention, nor does it guarantee that the trial court would make a determination whether he was eligible.[7] The agreed upon sentence is that Baker serve two years executed for one count and three years with one year suspended on the second count. The trial court then determined that the sentences be served consecutively.

■ Baker also asserts, without citation of authority, that the trial court erred in ordering that he pay a fee of $250 for the services of his public defender in that he is indigent and further that such fee was not a part of the plea agreement. The plea agreement stated that court costs would be assessed to Baker, and that the trial court had full authority to impose a fine against Baker. However, it does not specifically state that Baker would be required to pay a fee for his public defender.

At the sentencing hearing the trial court advised Baker that he was being ordered to pay the $250 public defender fee. No objection was made at that time. To the extent, however, that Baker's argument is being made as part of his ineffective assistance of counsel claim, we will address it.

Indiana Code § 33–9–11.5–6 (Burns Code Ed. Repl.1998) provides that:

---

7. We note that during the sentencing hearing, the trial court did state that Baker was not eligible for Community Corrections and that he did not know whether Baker would be eligible for work release.

"(a) If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation ... the court shall require payment by the person ... of the following costs in addition to other costs assessed against the person:

(1) Reasonable attorney's fees if an attorney has been appointed for the person by the court."

The record before us does not disclose that the court conducted an inquiry into Baker's ability to pay and we cannot assume that such inquiry was made. On the other hand it may not be assumed that merely because a public defender was appointed to represent Baker, he is unable to pay the costs of his representation as contemplated by Ind.Code § 33–9–11.5–7 (Burns Code Ed. Repl.1998), setting forth the factors to be considered by the court in making an "ability to pay" determination. Nevertheless, because there is no showing that the court determined that Baker had the ability to pay for his representation, the order to do so may not be validated under the statute.

Accordingly, to determine whether the order to pay a public defender fee is valid, we must determine whether public defender fees are considered court costs. The above quoted statute, though not controlling under the specific facts of this case, provides guidance. It speaks of "costs of representation ... in addition to other costs assessed against the person." I.C. § 33–9–11.5–6. The statute appears to place the fee for public defender representation in a category of "costs" separate and distinct from other "court costs." Again, it is necessary to note that the plea agreement designated "court costs" as those costs to be paid by Baker. Furthermore, the trial court in this case made separate entries for various costs and for the public defender fee. Thus we conclude that the

public defender fee, in this case, was not intended to be a part of the "court costs" covered by the plea agreement. For these reasons, we direct the trial court to modify its judgment to delete the order to pay the $250 public defender fee.

## III

### Effective Assistance of Counsel

 Baker also asserts that he was denied effective assistance of counsel because his counsel failed to enforce the plea agreement, failed to depose a witness, and, as discussed above, would not expedite representation unless Baker paid a $10,000 fee or entered the plea agreement.

In order to prevail upon his claim of ineffective assistance of counsel, Baker must overcome the presumption that counsel's performance was appropriate. *See Allen v. State*, 743 N.E.2d 1222, 1234 (Ind. Ct.App.2001), *trans. denied.* Effectiveness of counsel is a mixed question of law and fact. *Segura v. State*, 749 N.E.2d 496, 501 (Ind.2001). Baker must show that his counsel's performance was deficient, which means that it fell below an objective standard of reasonableness. *See Id.; Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, Baker must also show that the deficient performance resulted in prejudice. *See Segura*, 749 N.E.2d at 501; *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

In *Segura*, our Supreme Court revisited the appropriate showing required by a defendant upon review of a claim of ineffective assistance of counsel following a guilty plea. The Court created two categories of claims and enunciated different treatments of those claims depending upon whether the allegation related to a defense or failure to mitigate a penalty, or whether the

claim related to penal consequences.[8] *Segura*, 749 N.E.2d at 507. At first glance, it seems that our Supreme Court narrowly construed the categories, thereby announcing a standard for a fraction of the possible types of claims. Nevertheless, following our analysis of *Segura*, we believe that the categories are not as narrow as they first seem.

Our concern is in the proper interpretation to be given to the category for claims which relate to a defense or failure to mitigate a penalty. This could be interpreted as being specific to the use of an affirmative defense at a trial, which seems to be supported by various references to affirmative defenses in the opinion. However, such a narrow interpretation would exclude a large number of guilty plea ineffective assistance claims from review under the standard established by *Segura*, when those claims did not relate to penal consequences or an affirmative defense. This interpretation would then require us to determine whether the same standard should still be applied based upon prior case law, or rather, that the appropriate standard has not yet been addressed and that our Supreme Court left the choice for a proper standard for another day. It is our belief that our Supreme Court did not intend to create a restrictive category that would exclude such a large number of claims. We also do not believe that it was the intention of our Supreme Court to create a different standard for ineffective assistance claims that generally arise from representation of a defendant. Accordingly, our reading of *Segura* is that the category of claims relating to a defense or failure to mitigate a penalty applies to representation matters in general, including those at issue in this case—the failure to depose a witness and the threat of lax representation unless a plea agreement is signed or a large sum of cash is paid. Therefore, to establish prejudice following his guilty plea, Baker must show that there is a reasonable probability that a more favorable result would have been obtained in a competently run trial. *Id.* at 507.

The granting of summary judgment upon an ineffective assistance of counsel claim without any evidentiary hearing is unusual. *Hough v. State*, 690 N.E.2d 267, 273 (Ind.1997), *cert. denied* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Ineffective assistance of counsel claims generally revolve around a unique set of facts specific to the case and many of the facts exist outside of the record. *Id.* If the State accepts as true all of the defendant's factual allegations, an evidentiary hearing may not be necessary. *Id.* The trial court has discretion whether to grant summary disposition, and we will not reverse unless there was an abuse of that discretion. *Poling v. State*, 740 N.E.2d 872, 877 (Ind.Ct.App.2000). The trial court does not abuse its discretion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

We have already determined, based upon Baker's answers at his guilty plea hearing, that Baker's claim that he was coerced into signing the plea agreement by his counsel's refusal to expedite representation was not worthy of reversal. We have also determined that the trial court

---

**8.** We are uncertain what distinction our Supreme Court was drawing in using the terms "failure to mitigate a penalty" as opposed to a claim relating to "penal consequences." It may be that the former refers to a failure of counsel in forging the plea agreement to achieve a penalty less than would follow from a trial conviction, whereas the latter phrase may refer to misadvisement or misrepresentation to the defendant as to the possible penal consequences to which the defendant would be subjected.

properly followed the plea agreement in sentencing Baker to confinement by the Department of Correction. Therefore, other than with regard to the imposition of a public defender fee assessment, Baker's claim that his counsel failed to require the court to enforce the plea agreement as accepted can serve as no basis for an ineffective assistance of counsel claim. To the extent that it was improper for the trial court to order the payment of a public defender fee by Baker, we do not believe that counsels' failure to object fell below an objective standard of reasonableness.

However, Baker's claim regarding the failure of counsel to depose the victim[9] is not so easily dismissed. The post-conviction court, in denying Baker's petition, adopted the State's analysis provided in its response to the petition as its own findings of fact and conclusions of law. The State did not directly address the issue of counsel's deposing the victim, therefore, it appears that the trial court also failed to make any findings of fact regarding that issue. However, the failure to make findings of fact is not critical on this point.

In *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052, the United States Supreme Court stated, "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." Seizing upon this statement, the Third Circuit U.S. Court of Appeals has determined that counsel was not ineffective for failing to interview a potential witness to an attack after the defendant had outlined the testimony which the witness would give. *Lew-is v. Mazurkiewicz*, 915 F.2d 106, 113 (3rd Cir.1990).

Baker's assertion is that he was prejudiced by counsel's failure to depose the victim, and had counsel not been ineffective, he would not have entered the guilty plea. This argument must fail because of the lack of a sufficient nexus between the deposing of the victim and the entering of the guilty plea by Baker, and the further inability of Baker to show any resulting prejudice. In his affidavits in support of his petition for post-conviction relief, Baker claims that his counsel did not ask the victim appropriate questions, which most likely could be used for impeachment purposes at trial. However, Baker acknowledges that his counsel was aware of the facts which Baker thought the victim should have been questioned about. Had counsel interviewed the victim, counsel would not have been made aware of new information, and therefore, any professional guidance that was provided to Baker in entering the guilty plea could not have fallen below an objective standard of reasonableness, nor could it have been prejudicial. Because the information would have been the same in either situation, and did not exonerate Baker, he has failed to show there is a reasonable probability that a different result would have occurred at trial.

Furthermore, we acknowledge that there was no genuine issue of material fact upon this issue. Taking Baker at his word, the post-conviction court had ample basis to deny Baker relief. Baker's counsel had the relevant information and based upon this information, advised Baker to enter a guilty plea. The post-conviction

---

9. It is not clear whether Baker's counsel deposed the victim. In his brief, Baker claims that his counsel did not, but in his affidavits in support of his petition for post-conviction relief, Baker seems to make arguments that counsel failed to depose the victim, or in the alternative, that his counsel did not ask the proper questions during a deposition.

court did not err in denying Baker a hearing upon this ground.

Based upon the foregoing, we affirm in part and reverse in part.

KIRSCH and ROBB, JJ., concur.