# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jun 11 2012, 9:54 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DELMAS SEXTON II,    )
                     )
    Appellant-Defendant,    )
                     )
    vs.              )    No. 02A03-1110-CR-465
                     )
STATE OF INDIANA,    )
                     )
    Appellee-Plaintiff.    )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Terry C. Shewmaker, Special Judge
Cause No. 02D04-1002-MR-2

**June 11, 2012**

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

Delmas Sexton II appeals his sixty-five-year sentence for felony murder. Principally, Sexton contends that the trial court abused its discretion in sentencing him when it found as an aggravating circumstance the fact that as a multiple-conviction felon he was unlawfully possessing the gun he used to kill his victim. This is a question about which there is some disagreement in the reported decisions, but we affirm.

FACTS AND PROCEDURAL HISTORY

On March 24, 2009, Sexton went to Donald McKee's residence in Allen County, ordered McKee at gunpoint to write him checks, bound him with duct tape, covered his head, and forced him into a truck. As McKee begged for his life, Sexton shot him in the head three times. McKee's body was found over a week later in the truck inside an unattached garage.

The State charged Sexton with murder, felony murder, class A robbery, criminal confinement and unlawful possession of a firearm by a serious violent felon, both as class B felonies, and two counts of class C forgery. It also alleged that Sexton was an habitual offender.

In December 2010, on the day his jury trial was to begin, Sexton punched his attorney in the face in open court. The jury trial was cancelled. Shortly after, Sexton sent a death threat targeting the presiding judge and his family. This eventually led to the appointment of a new special judge. In September 2011, on the day his jury trial was to begin anew, Sexton pled guilty to felony murder pursuant to a plea agreement in which the State agreed to dismiss all the remaining charges. The trial court accepted the plea and entered judgment of conviction.

2

At the sentencing hearing, Judge Terry Shewmaker entered an exceptionally thorough statement about aggravating and mitigating circumstances.

Among the aggravators, the court identified: (1) Sexton's criminal history, namely, two convictions for battery as misdemeanors and two as felonies, two felony convictions for criminal confinement, and a felony conviction for intimidation; (2) Sexton's previous violation of probation; (3) his lack of respect for the court process; (4) the escalating nature of his crimes of violence; (5) his juvenile history, which includes three adjudications for attempted child molesting; (6) his use of illegal drugs, running from cocaine to heroin to methamphetamine to acid and more; (7) his attempt to manipulate evidence in this case (a witness testified that he signed an affidavit under threat by Sexton that he would otherwise have him or his family killed); (8) that Sexton is in need of correctional rehabilitation best provided in a penal facility for a lengthy period of time; (9) that McKee was "left languishing," Sent. Tr. p. 63; (10) that Sexton is at very high risk of reoffending, according to an assessment under the Indiana Risk Assessment System; and (11) that Sexton possessed a handgun despite his prior felony convictions.

Among the mitigators, the trial court identified: (1) Sexton's acceptance of responsibility, tempered by the fact that his guilty plea occurred on the day of trial; (2) that he is intelligent; (3) his mental health issues, which the court gave minimal weight because evidence on that point was from mental health records nearly twenty years old; and (4) his drug addiction, which the court gave minimal weight because previous intensive inpatient treatment had not been successful.

In evaluating the aggravators and mitigators, the trial court stated, "Any one of the aggravators that I have listed is substantial enough alone or taken in conjunction with the other[s] to warrant the imposition of a full ten[-]year enhanced sentence." *Id.* at 67. The trial court sentenced Sexton to the maximum term of sixty-five years executed. Sexton now appeals his sentence.

## DISCUSSION AND DECISION

Sexton challenges a number of the aggravating circumstances found by the trial court. Such findings rest within the sound discretion of the trial court, and we review them on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007).

Principally, Sexton argues that his illegal possession of the murder weapon was an improper aggravator because the charge of unlawful possession of a firearm by a serious violent felon was dismissed pursuant to his plea agreement.

The legal basis for this contention flows from *Hammons v. State*, 493 N.E.2d 1250 (Ind. 1986). Hammons stood trial for murder, and the jury found him guilty of the lesser included offense of voluntary manslaughter. In sentencing the defendant, the trial court repeatedly declared that the jury had been wrong, that Hammons had in fact committed murder, and that the maximum penalty for manslaughter should be imposed in recognition of that fact. The Supreme Court reversed, holding that this invaded the province of the jury and was tantamount to sentencing the defendant for the crime on which he had been acquitted. *Id.* at 1253.

4

This Court later took a similar approach in the context of a guilty plea. *Conwell v. State*, 542 N.E.2d 1024 (Ind. Ct. App. 1989). The State had charged Conwell with burglary as a class B felony, but the parties submitted a plea bargain under which Conwell pled to burglary as a class C. This Court held that the sentencing judge could not find as an aggravator the fact that the burglary had occurred at a residence because that was the very fact that distinguished the class B and class C versions of the offense. *Id.* at 1025.

These holdings about sentencing on lesser included offenses were later applied in a somewhat different setting.

In *Farmer v. State*, 772 N.E.2d 1025 (Ind. Ct. App. 2002), the defendant was charged with attempted murder, burglary resulting in bodily injury, intimidation, and resisting law enforcement. He pled guilty to attempted murder, and the State dismissed the remaining charges. In sentencing the defendant, the trial court identified as aggravators that the offense occurred in the victim's home, that the defendant screamed threats at the victim, and that he disobeyed a police officer's command to release the victim. Farmer argued on appeal that the court improperly relied on these facts because they supported the burglary, intimidation, and resisting law enforcement charges that were dismissed as a part of his plea agreement. A panel of this Court agreed, stating that if the defendant "were sentenced more harshly in reliance upon these facts, he would not receive the full benefit of his plea agreement." *Id.* at 1027.

Whether *Farmer* represents appropriate practice or not has recently been the subject of disagreement in this Court. In *Bethea v. State*, 964 N.E.2d 255 (Ind. Ct. App.

5

2012), *trans. granted*, the defendant faced multiple charges, including burglary resulting in bodily injury, two counts of robbery, and three counts of confinement. Bethea pled guilty to one count each of robbery and confinement in exchange for dismissal of the other charges. In sentencing Bethea, the trial court noted as an aggravator that one of the victims suffered injury. On appeal, Bethea argued that the court abused its discretion by treating the injury as an aggravator because the injury had been an element of the burglary charge that was dismissed pursuant to his plea agreement. The lead opinion declared that a defendant receives the full benefit of his bargain when multiple charges are dismissed in accordance with the agreement (there having been no provision that the sentencing court could not take into account aspects of the crime that were admitted or established by proper evidence, in Bethea's case that the victim was injured in the course of the crimes for which Bethea was being sentenced). This observation produced two other opinions, both of which adhered to the view that *Farmer* and *Roney v. State*, 872 N.E.2d 192 (Ind. Ct. App. 2007), *trans. denied*,[1] correctly prohibited considering such facts. *Bethea*, 964 N.E.2d at 269 (May, J., concurring in result), 271 (Brown, J., dissenting).

While this author finds himself aligned with the lead opinion in *Bethea*, two members of this panel joined in *Farmer*, and we thus hold here that it was an abuse of

---

[1] The *Roney* court acknowledged that "the trial court is permitted to consider uncharged misconduct when enhancing a sentence," 872 N.E.2d at 200, but also said: "If a trial court accepts a plea agreement under which the State agrees to drop or not file charges, and then uses facts that give rise to those charges to enhance a sentence, it in effect circumvents the plea agreement." *Id.* at 201 (citing *Farmer*, 772 N.E.2d at 1027).

6

discretion for the trial court to consider the fact that Sexton shot his victim using a handgun it was illegal for a person with five felony convictions to possess.

In any event, given that the trial court identified a multitude of other aggravators and stated that any one of them alone or in conjunction with the others warranted the maximum sentence, we are confident that the court would have imposed the same sentence even without this aggravator. *See McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007) (clear that the trial court would have imposed the same sentence regardless of the challenged aggravators).

Second, Sexton argues that the court's finding that McKee was left languishing is unsupported by the record. As respects this aggravator, the trial court said, "[T]he victim was left languishing, left without seeking medical attention. That is evidence of callousness, it's reprehensible conduct . . . ." Sent. Tr. p. 63. Sexton is correct that the available evidence does not actually tell us whether McKee languished after being shot three times in the head or died quickly. On the other hand, it is apparent that the incident lasted for quite some time and that McKee suffered fear and anxiety for a prolonged period. While it may be that "languished" was not quite the right word, the court was plainly warranted in finding that Sexton acted with "callousness." Taken as a whole, we are hard put to call these observations an abuse of discretion.

Third, Sexton challenges the use of his prior juvenile adjudications as an aggravator. The Supreme Court has upheld the use of prior juvenile adjudications to enhance a sentence on multiple occasions. *See, e.g.*, *McDonald*, 868 N.E.2d at 1114;

*Mitchell v. State*, 844 N.E.2d 88, 92 (Ind. 2006); *Ryle v. State*, 842 N.E.2d 320, 321-23 (Ind. 2005).

Finally, Sexton argues that the trial court's use of various aspects of his criminal history as separate aggravators is improper because it violates the federal and state prohibitions against double jeopardy. The Federal Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Its Indiana counterpart provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14.

Sexton says the trial court's finding of multiple aggravators relating to his criminal past (like his criminal convictions, his drug use, the escalating nature of his crimes of violence, that he is at high risk of reoffending) is akin to being punished multiple times for the same offense. We disagree. A trial court may consider multiple factors relating to a defendant's criminal past at the sentencing stage. The trial court here convicted Sexton of felony murder. For that crime, the trial court imposed one sentence. There is no double jeopardy violation.

CONCLUSION

For the reasons stated, we affirm Sexton's sentence.

Affirmed.

NAJAM, J., concurs.

BAILEY, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DELMAS SEXTON II,                          )
                                                )

   Appellant-Defendant,                    )

                                                )

        vs.                                  )       No. 02A03-1110-CR-465

                                                )

STATE OF INDIANA,                          )

                                                )

   Appellee-Plaintiff.                     )

**BAILEY, Judge, concurring**

I fully concur in this opinion but write separately to reaffirm my view that the holding set forth in Farmer v. State is a proper application of the principle expressed in Hammons.

As pointed out, Hammons involved a defendant who was acquitted of murder but found guilty of voluntary manslaughter. The trial court disagreed with the jury's verdict and imposed the maximum penalty for manslaughter based upon that disagreement. The Supreme Court reversed. Hammons, 493 N.E.2d at 1253. In essence, the defendant had not received the benefit of the acquittal.

9

Conwell extended Hammons to the guilty plea context. Conwell, 542 N.E.2d at 1025. There, pursuant to a plea agreement, the defendant pled guilty to burglary as a class C felony rather than burglary as a class B felony, as charged. We held that the trial court could not find as an aggravator the fact that the burglary occurred in a residence, as that was the fact distinguishing the class B and C felonies. Id. In essence, the defendant had not received the benefit of having pled guilty to the lesser-included offense.

Here, the prosecutor charged Sexton with eight counts: murder; felony murder; robbery; criminal confinement; two counts of forgery; and unlawful possession of a firearm by a serious violent felon; the State also alleged that Sexton is an habitual offender. Yet, pursuant to a plea agreement, Sexton pled guilty to felony murder and the State dismissed all remaining charges. Nevertheless, when imposing the sentence, the trial court identified as an aggravator facts underlying a dismissed charge, i.e., that Sexton possessed a handgun despite his prior felony convictions. I believe that, by so doing, the court deprived Sexton of the benefit of his bargain, although in this instance the error was harmless.

A plea agreement is a contract, "an explicit agreement between the State and defendant" that is binding upon the trial court and both parties once the court has accepted the agreement. Griffin v. State, 756 N.E.2d 572, 574 (Ind. Ct. App. 2001) (citations omitted), trans. denied; Wright v. State, 700 N.E.2d 1153, 1154 (Ind. Ct. App. 1998). Both parties bargain for and receive substantial benefits from the agreement. Wright, 700 N.E.2d at 1154. "When a plea agreement rests in any significant degree on a

promise by the prosecutor, so that the promise can be said to be part of the inducement or consideration for the plea, such promise must be fulfilled." Id.

When, as here, the defendant is induced to plead guilty by a promise to dismiss charges, the defendant's reasonable expectation under the contract is that there will be no concomitant penal consequences from those dismissed charges. Likewise, when the prosecutor enters into a plea agreement providing for the dismissal of certain charges, the prosecutor agrees that there will be no conviction or sentence attendant to the dismissed charges. When accepted, the trial court is bound by that agreement. Thus, I must conclude that, in the context of the plea agreement, the trial court should not have identified as an aggravator that Sexton possessed a handgun despite his prior felony convictions, as that charge had been dismissed.

I recognize that, to avoid misunderstandings with regard to such a binding agreement, the better practice is for counsel to reduce to writing *all* terms of a plea agreement. Griffin, 756 N.E.2d at 574. Thus, if the prosecutor chooses to argue that the trial court should consider evidence of dismissed charges as an aggravator, the plea agreement should provide as much and the defendant could then make an informed decision regarding the benefits of such an agreement. A "meeting of the minds" in this context is not inconsequential. Therefore, absent such a provision, I remain convinced that, in the context of a plea agreement, the trial court abuses its discretion when it uses conduct forming the basis of a dismissed charge to enhance the sentence for the offense to which the defendant pled guilty.