STATE of Indiana, Appellant–Respondent,

v.

Mark DAMRON, Appellee–Petitioner.

No. 49A04–0901–PC–29.

Court of Appeals of Indiana.

Oct. 19, 2009.

Rehearing Denied Dec. 15, 2009.

---

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Robert D. King, Jr., Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

The State appeals the granting of Mark Damron's petition for post-conviction relief. We reverse.

### Issue

The State raises one issue, which we restate as whether the post-conviction court properly granted Damron's petition for post-conviction relief where the tran-

script of his 1991 guilty plea hearing had been destroyed.

### Facts

On February 13, 1991, Damron pled guilty to one count of Class D felony operating a vehicle while intoxicated. On January 17, 2007, Damron filed a petition for post-conviction relief alleging that his guilty plea was not knowing, voluntary, or intelligent because the trial court did not keep a record of his guilty plea hearing.

Although the post-conviction court initially granted Damron's petition, on April 15, 2008, it subsequently granted the State's motion to correct error. On July 15, 2008, the post-conviction court held an evidentiary hearing at which Damron testified that he pled guilty but did not remember the particulars of the guilty plea. The post-conviction court also considered affidavits from trial counsel and the trial judge who presided over the guilty plea.[1] In their affidavits, they stated that they were unable to recall the guilty plea hearing. The post-conviction court also considered the affidavit of the court reporter, who stated:

1. That she is the Court Reporter for the Marion County Criminal Court # 21.

2. That she is has [sic] made a due and diligent search for the record of evidence in State of Indiana vs. Mark Damron, Cause 49F06–8909–CF–109913.

3. That these tapes are only kept for a period of ten (10) years and the above tapes have since been destroyed.

---

1. It does not appear that the three affidavits were admitted into evidence at the post-conviction relief hearing; instead, it appears that they were tendered to the trial court at an earlier hearing. The State included copies of them in its appendix. Neither the State nor Damron makes an argument regarding the admissibility of the affidavits or filed a motion to strike the affidavits.

4. That due to the above, she is unable to prepare the requested transcript.

App. p. 61.

Based on the destruction of the tapes, the post-conviction court concluded that "[a] destroyed record is, by its very definition, silent." App. p. 58. The post-conviction court held that a waiver of *Boykin* rights cannot be presumed from a silent record and granted Damron's petition for post-conviction relief. The State now appeals.

## Analysis

■ The State appeals the granting of Damron's petition for post-conviction relief. "Indiana Trial Rule 52(A) governs review of a judgment granting post-conviction relief." *State v. Cozart*, 897 N.E.2d 478, 482 (Ind.2008). Although we do not defer to the postconviction court's legal conclusions, a post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

■ In his petition for post-conviction relief, Damron argued that the destruction of the tape of his guilty plea hearing prevented meaningful review of his 1991 guilty plea. The United States Supreme Court requires that the record of a guilty plea hearing must show, or there must be an allegation and evidence which show, that the defendant was informed of, and waived, three specific federal constitutional rights: the privilege against compulsory self-incrimination, right to trial by jury, and the right to confront one's accusers. *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). The *Boykin* court made clear that courts cannot presume a waiver of these important federal rights from a silent record. *Id.*

In *Hall*, however, our supreme court clarified that a lost record is not the per se equivalent of a silent record. The *Hall* court explained:

> The fact that the record of a guilty plea hearing can neither be found nor reconstructed does not of itself require granting post-conviction relief. Rather, as with any claim made in a petition for post-conviction relief, a claim that the petitioner's conviction was obtained in violation of federal or state constitutional safeguards ... must be proven by a preponderance of the evidence.

*Hall*, 849 N.E.2d at 470.

The State argues, "There is no evidence whatsoever in this case, that the trial court received Petitioner's guilty plea without a hearing, without advisements of constitutional rights, or without any warnings of the consequences of his guilty plea." Appellant's Br. p. 7. Damron responds that "the transcript was not simply lost, or missing, but was wrongfully and intentionally destroyed in violation of the Indiana Rules of Criminal Procedure." Appellee's Br. p. 7. Indiana Criminal Rule 10 provides in part:

> If a transcription of the recorded matters has not been prepared, certified and filed in the criminal proceeding, the electronic recording of all oral matters, together with a log denoting the individuals recorded and the meter location of crucial events, shall be maintained as a court record for ten years in all misdemeanors or fifty-five years in all felony cases.

Damron asserts, "Allowing the State to destroy a record, decades before the statutory retention period has expired, while maintaining the initial presumption of regularity is not only a grudging application of constitutional protections, it is an outright evisceration of the accountability which *Boykin* sought to establish." Appel-

lee's Br. p. 10. Thus, the question before us is whether the premature destruction of a tape of a guilty plea hearing by court staff renders the record silent for purposes of *Boykin.* We conclude it does not.

In *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the Supreme Court addressed the issue of a defendant, Raley, who was charged with being a persistent felony offender under a Kentucky statute. Raley moved to suppress his prior guilty pleas, claiming they were invalid because the record contained no transcripts of the proceedings and did not affirmatively show that his pleas were knowing and voluntary under *Boykin.* The Supreme Court rejected Raley's challenge to Kentucky's burden-shifting rule and concluded that the Due Process Clause permits a state to impose a burden of production on a recidivist defendant who challenges the validity of a prior conviction under *Boykin. Parke,* 506 U.S. at 34, 113 S.Ct. at 525–26. The Court reasoned:

> To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights. Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied equally to other forms of collateral attack. Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments.
>
> There is no good reason to suspend the presumption of regularity here. This is not a case in which an extant transcript is suspiciously "silent" on the question whether the defendant waived constitutional rights. Evidently, no transcripts or other records of the earlier plea colloquies exist at all. Transcripts of guilty plea proceedings are normally made in Kentucky only if a direct appeal is taken or upon the trial judge's specific direction and the stenographer's notes and any tapes made of the proceedings normally are not preserved more than five years. The circumstance of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old. But *Boykin* colloquies have been required for nearly a quarter century. On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

*Id.* at 29–30, 113 S.Ct. at 523–24 (citations omitted).

As in *Parke,* Damron is collaterally attacking his guilty plea. *See Hall,* 849 N.E.2d at 472 ("[O]ur courts have long deemed post-conviction proceedings collateral."). Also, the destroyed record is not "suspiciously silent." The untimely destruction of a tape does not in and of itself indicate that the State—the county prosecutor or the Attorney General—acted improperly. *See id.* (observing there was "no suggestion that the cause of the missing record is the result of misconduct by the State."). It appears that the trial court had a policy of destroying tapes after ten years, and without more we cannot equate this policy, although in contravention of

the Indiana Rules of Criminal Procedure, to governmental misconduct. Given these facts, we cannot conclude that the presumption of regularity should not apply here.

Further, Damron presented no evidence that he was not informed of his *Boykin* rights at the time of his guilty plea. *Cf. Dalton v. Battaglia*, 402 F.3d 729, 734 (7th Cir.2005) (remanding for an evidentiary hearing to determine whether Dalton knew he was eligible for an extended sentence under Illinois law when he pled guilty where the transcript "disappeared" and where he submitted his affidavit and his mother's affidavit in which they stated he was not informed of the possibility of an extended term prior to pleading guilty). To establish that his guilty plea was unknowing and involuntary, Damron was required to prove by a preponderance of the evidence that he was not informed of his *Boykin* rights. *See Hall*, 849 N.E.2d at 470. Damron did not carry his burden of proof.

### Conclusion

Because Damron did not demonstrate that he was entitled to post-conviction relief, the post-conviction court improperly granted his petition. We reverse.

Reversed.

NAJAM, J., and KIRSCH, J., concur.