# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**RODNEY POL, JR.**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Mar 20 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURTIS A. BETHEA, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 18A05-1107-PC-416 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-0805-PC-3

**March 20, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Curtis A. Bethea was charged with multiple offenses stemming from the robbery of two victims. He ultimately pled guilty to one count of robbery and one count of criminal confinement, both class B felonies. The trial court imposed an aggregate sentence of forty years, the maximum allowable pursuant to the plea agreement. Appellate counsel argued that maximum consecutive sentences were impermissible pursuant to statute, but we affirmed Bethea's sentence.

Bethea subsequently filed a petition for post-conviction relief. He argued that trial counsel was ineffective because he failed to offer evidence that would have negated the trial court's finding that he knowingly used a juvenile in the commission of his offenses. He also argued that appellate counsel was ineffective because he failed to challenge several aggravating factors found by the trial court and/or challenge Bethea's sentence pursuant to Indiana Appellate Rule 7(B). The post-conviction court denied Bethea's petition.

We find that trial counsel was not ineffective because he had a valid strategic reason for not offering additional evidence concerning Bethea's juvenile co-defendant, when that evidence also contained prejudicial information. Based on *Farmer v. State*, 772 N.E.2d 1025 (Ind. Ct. App. 2002), and *Roney v. State*, 872 N.E.2d 192 (Ind. Ct. App. 2007), *trans. denied*, appellate counsel could have challenged the trial court's use of one of the victim's injuries as an aggravating factor because that was an element of the burglary charge that was dismissed pursuant to Bethea's plea agreement. However, we conclude that *Farmer* and *Roney* misapplied the precedents on which they relied, and we decline to follow those cases.

2

Bethea's remaining arguments concern minor mischaracterizations in the trial court's findings which are not significant enough in light of the valid findings to warrant a downward revision. Therefore, we affirm the denial of post-conviction relief.

**Facts and Procedural History**

On the evening of December 13, 2005, Bethea, Jerry Gore, Eddie Wilson, and Tyler Seaton went to the home of Angela Dailey and Jason Gates. Seaton knocked on the door, and when Gates opened it, she asked to use his telephone. While the door was still open, Bethea and Gore entered the home wielding guns. Gore ordered Gates to get on the floor, and Bethea bound his arms with tape. Gore pulled Dailey out of bed, dragged her to the living room, and told Seaton to bind her arms with tape. Gore and Bethea ransacked the house looking for money and drugs. Dissatisfied with what they found, Gore demanded to know where "the rest of it" was. State's Ex. 1. He hit Gates with his gun and kicked him in the head. Someone put a couch cushion over Dailey's head to keep her from looking at them. They went through Dailey's purse and took her driver's license, social security card, checkbook, and car keys. Gore and Bethea left in Dailey's car, and Seaton left with Wilson.

Seaton, who was seventeen at the time of the offense, later made a statement to the police. She claimed that Gore and Wilson had come to her house and told her that Gates owed them money. They wanted her to go knock on his door because they knew that Gates was scared of them and would not answer the door for them. Seaton denied knowing that the men intended to rob Gates. Seaton stated that they picked up Bethea on the way to Gates's house and that she had never met him before that night.

3

Seaton was waived into adult court, and she pled guilty to class C felony robbery and class C felony assisting a criminal. She testified against Gore, who was convicted on charges stemming from the robbery. Bethea was charged with nine counts: (1) class A felony burglary resulting in bodily injury; (2) robbery of Gates as a class B felony; (3) robbery of Dailey as a class B felony; (4) confinement of Gates as a class B felony; (5) class B felony confinement of Dailey based on her confinement in the living room; (6) intimidation of Gates as a class C felony; (7) intimidation of Dailey as a class C felony; (8) class D felony auto theft; and (9) class B felony confinement of Dailey based on her removal from the bedroom to the living room. Counts 2 through 7 and 9 were enhanced based on the fact that Bethea was armed with a deadly weapon. On October 19, 2006, Bethea agreed to plead guilty to count 2 (robbery of Gates) and 5 (confinement of Dailey) in exchange for dismissal of the other charges. Sentencing was left to the trial court's discretion.

At the sentencing hearing on February 9, 2007, Dailey testified about the robbery. She stated that she sustained a lower back injury when she was pulled off the bed and had pain and bruising in her wrists from being bound. Dailey suffered from severe anxiety after the robbery and was unable to sleep in her bed for four months. Dailey saw Gates get hit with a gun. Gates did not testify, but submitted a statement that was included in the presentence investigation report ("PSI"). Gates stated that he sustained bruises and abrasions and now suffers from more frequent seizures.

Bethea testified that his father was an alcoholic and a drug abuser who was physically, mentally, and sexually abusive to Bethea, his mother, and his siblings. Bethea was removed

4

from his home at the age of six and lived in various foster homes and juvenile facilities in New York and Virginia for most of the rest of his childhood. Bethea testified that he was physically abused in some of these placements. Bethea stated that he had no juvenile record because any behavioral issues were dealt with through his placements and what would be the equivalent of a Child In Need of Services case in Indiana.

Bethea's adult record was outlined in the PSI. In 2000, he was charged with class B misdemeanor possession of marijuana in New York. A bench warrant was issued, and the PSI does not indicate any further action taken in that case. In 2001, Bethea pled guilty to obstructing justice, petit larceny, and two counts of being an accessory after the fact in Virginia and received suspended or partially suspended sentences on each conviction. In April 2002, Bethea pled guilty to possession of cocaine as a lesser-included offense of possession of cocaine with intent to distribute in Virginia, and he received a suspended sentence. In August 2002 and June 2003, Bethea was found guilty of violating his probation in Virginia. In 2004, notice of additional probation violations was filed in Virginia, and a warrant was issued that remains active. Since 2005, there have been three warrants issued in New York that remain outstanding – one for class A misdemeanor possession of a controlled substance, one for class A misdemeanor criminal impersonation, and one for class E felony possession of a credit card.

Bethea testified that he has two biological children, ages five and six, and helps to take care of a third child. The PSI indicates that his children live with their mothers, one in New Jersey and one in Virginia, and that Bethea has not been ordered to pay child support.

5

Bethea testified that he has ADHD and learning disabilities, and that he also has been diagnosed with schizophrenia and paranoia and has taken medication for those conditions. During the presentence investigation, Bethea reported having ADHD and learning disabilities, but no other mental health diagnoses. Bethea testified that he has used drugs and alcohol since the age of nine and has tried a wide range of drugs including PCP, marijuana, cocaine, embalming fluid, heroin, inhalants, and acid. He admitted to using PCP, marijuana, heroin, and cocaine the day of the robbery. He has never received treatment for his drug addiction, and he has never been ordered to do so. During the presentence investigation, Bethea stated that he knows the difference between right and wrong, makes his own decisions, and is easily influenced by drugs and alcohol.

Bethea testified that he did not know Seaton before the night of the offenses and did not know how old she was. He apologized for his actions, but denied having a weapon while committing the offenses.[1] To rebut Bethea's claim that he did not have a weapon, the State offered into evidence statements that Dailey and Seaton made to the police.

Trial counsel asked the court to consider that Bethea accepted responsibility by pleading guilty, that he was remorseful, that his incarceration would cause hardship on his dependents, that he had been abused by his father and in several of his placements, that he has had periods of gainful employment, that he has mental health problems, that he is addicted to drugs, and that he is relatively young (twenty-five at the time of the offense).

---

[1] At the guilty plea hearing, Bethea admitted that the offenses were "accomplished through the use of force and while armed with a deadly weapon, a gun," but he did not specifically admit that he was wielding a gun. Petitioner's Ex. 5 at 8-9.

6

The State argued that Bethea's use of a juvenile in the commission of a crime should be considered an aggravator, and trial counsel argued that it should not be considered:

> I don't believe that the presence of Tyler Seaton should be considered an aggravating factor in the sense of a juvenile being present. Tyler Seaton is not a victim in this case and she's not a witness in this case, she's a defendant in this case. She's riding along with her boyfriends and they stop and pick up Curtis Bethea. And she's right along in with it. She's a seventeen (17) year old acting like a twenty-five (25) year old. And of course, she's already been sentenced to four (4) years.

Sentencing Tr. at 61.

Trial counsel also asked the court to discount the State's argument that Bethea had not benefitted from prior attempts at rehabilitation:

> Also, Judge, I want you to discount an aggravating factor that Mr. Bethea has not benefitted from opportunities from the juvenile system and adult criminal system. Obviously, going from group home to group home, foster family to foster family, there [are] no juvenile delinquent cases that he would benefit from. What you've got here is you've got an eighteen (18) year old kid that's totally screwed up. And so he gets into the adult system for a variety of misdemeanors, and there's not a shred of evidence that said we're going to give you a psychological evaluation or we're going to do a drug abuse evaluation, we're going to prescribe a regimen for treatment.

*Id*.

The trial court made a thorough sentencing statement. The court gave "minimal weight" to Bethea's convictions of obstruction of justice and petit larceny. *Id*. at 68. The court gave "some weight" to the convictions of being an accessory after the fact. *Id*. at 69. The court erroneously stated that Bethea had a conviction of possession of cocaine with intent to distribute. The court gave that conviction "significant weight" because that would be a "significant felony" in Indiana. *Id*. The court also gave "significant weight" to Bethea's

7

probation violations because they show "a pattern of unwillingness to follow rules and directions from lawful authority." *Id.* at 69. The court also gave "some weight" to the active warrants in Virginia and New York and the fact that Bethea was on probation when he committed the current offenses. *Id.* at 70. The court found that prior attempts at rehabilitation had failed:

> The State of New York provided extensive services to Defendant as a juvenile, although they were not correctional in nature. Defendant did not take advantage of those services. As an adult, Defendant has received correctional opportunities through executed jail time in Virginia, at least four (4) times, and rehabilitative opportunities through supervised probation in Virginia.

*Id.* at 75.

> As to Seaton's involvement in the offenses, the court stated:

> Defendant knowingly committed these offenses in the presence of a person under eighteen (18) years old. Defendant used Tyler Seaton, then seventeen (17) years old, to gain access to the victims' residence. The Court gives this factor substantial weight, as Defendant involved a juvenile in the crimes, and this could lead to even more criminal activity on her part in the future. Defendant and his co-defendants as well knew they could not gain access to the victims' residence without the assistance of the juvenile.

*Id.* at 70. The court noted Dailey's and Gates's injuries and found that the harm to the victims was greater than was otherwise anticipated by the offenses. The court gave this, along with the fact that the offenses were committed inside a residence, "very significant weight." *Id.* at 71.

The court gave "minimal weight" to Bethea's remorse because he "has had numerous opportunities to rehabilitate himself and has not taken advantage of them." *Id.* at 71. The court also gave "minimal weight" to Bethea's acceptance of responsibility because he had

8

received a significant benefit from the plea bargain in that seven counts were dismissed. *Id.* at 72. The court gave "minimal weight" to Bethea's mental health issues, drug addiction, and childhood abuse because he had never voluntarily sought treatment. *Id.* at 73. The court also found that Bethea had not shown a nexus between any mental illness and his offenses. The court gave no weight to the hardship to Bethea's dependents because there was no evidence of significant contact with or financial support of his children.

The court determined that the aggravating circumstances outweighed the mitigating circumstances and imposed the maximum sentence of twenty years on each count. *See* Ind. Code § 35-50-2-5 (sentence for a class B felony is six to twenty years). The court ordered the sentences to be served consecutively, noting many of the same aggravators, along with the fact that there were two victims. Thus, Bethea received an aggregate sentence of forty years, the maximum allowable for the offenses to which he pled guilty.

Trial counsel filed a notice of appeal, and subsequently a different attorney was appointed to represent Bethea on appeal. Appellate counsel argued that the armed robbery and criminal confinement were part of an "episode of criminal conduct," and therefore his sentence could not exceed "the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Ind. Code § 35-50-1-2. This provision does not apply to "crimes of violence," a term that is defined in the statute by reference to a list of offenses. *Id.* Although class B robbery is an enumerated offense, criminal confinement is not. Appellate counsel argued that the crimes of violence exception did not apply because criminal confinement was not a crime of

9

violence; therefore, counsel argued that Bethea's sentence could not exceed thirty years, the advisory sentence for a class A felony.[2] We held that Bethea's argument had already been rejected by *Ellis v. State*, 736 N.E.2d 731, 737 (Ind. 2000), and *McCarthy v. State*, 751 N.E.2d 753, 756 (Ind. Ct. App. 2001), *trans. denied*; therefore, we affirmed his sentence. *Bethea v. State*, No. 18A02-0703-CR-247, 2007 WL 3378461 at *1 (Ind. Ct. App. Nov. 15, 2007) (memorandum decision).

On May 28, 2008, Bethea filed a pro se petition for post-conviction relief. Subsequently, a deputy of the Public Defender of Indiana filed an appearance in Bethea's case and filed an amended petition, which alleged that Bethea received ineffective assistance of trial and appellate counsel. As to trial counsel, Bethea argued that he failed to offer evidence that would have undermined the trial court's findings about the use of a juvenile in the commission of the crime. Specifically, he argued that a deposition of Seaton and the sentencing order in her case would show that she did not previously know Bethea and would have committed the offenses regardless of whether he was involved. As to appellate counsel, Bethea argued that he failed to cogently challenge the aggravating factors found by the trial

---

[2] Appellate counsel also quoted a lengthy portion of *Robertson v. State*, 860 N.E.2d 621 (Ind. Ct. App. 2007). *Robertson* concerned the interaction of Indiana Code Sections 35-50-1-2 and 35-50-2-1.3. *Robertson* interpreted Section 35-50-2-1.3 to mean that consecutive sentences were limited to the advisory sentence and concluded that Section 35-50-2-1.3 imposed a limitation on consecutive sentences that was distinct from and in addition to the limitation in Section 35-50-1-2. *Robertson*, 860 N.E.2d at 625. *Robertson* created a split on the Court of Appeals. *See id.* (expressing disagreement with *White v. State*, 849 N.E.2d 735 (Ind. Ct. App. 2006), *trans. denied*). Application of the *Robertson* panel's reasoning to Bethea's case would have also resulted in a maximum sentence of thirty years. At the time the appellant's brief was filed, transfer had been granted in *Robertson*, but the supreme court had not issued an opinion (curiously, the appellant's brief did not acknowledge this fact). Our opinion on Bethea's direct appeal was handed down on November 15, 2007. By that time, our supreme court had issued an opinion in *Robertson* that rejected the court of appeals panel's reasoning; thus, any argument based on *Robertson* was no longer valid. *Robertson v. State*, 871 N.E.2d 280, 285-86 (Ind. 2007).

10

court and also should have challenged the appropriateness of the sentence pursuant to Indiana Appellate Rule 7(B).

An evidentiary hearing was held on April 12, 2011. Trial counsel testified that he did not follow Seaton's case in detail and did not recall if or how he addressed Seaton's involvement in the offenses. Appellate counsel testified that he thought that the crime of violence issue was the most important issue to raise, but that it would have been "okay" to challenge the aggravating factors found by the trial court. PCR Tr. at 23. On July 1, 2011, the court issued an order denying post-conviction relief. The post-conviction court found that each of the aggravating factors could not have been successfully challenged or would not have resulted in a different sentence if invalidated and that a challenge to the appropriateness of the sentence would not have succeeded. Bethea now appeals.

**Discussion and Decision**

The petitioner in a post-conviction proceeding bears the burden of proving the grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Bethea is appealing a negative judgment; therefore, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44. "Although we do not defer to the post-conviction court's legal conclusions, a post-conviction court's findings and judgment will be reversed only on a showing of clear error – that which leaves us with a firm conviction that a mistake has been made." *State v. Damron*, 915 N.E.2d 189, 191 (Ind. Ct. App. 2009), *trans. denied*.

To prevail on a claim of ineffective assistance of counsel, Bethea must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced him. *Coleman v. State*, 694 N.E.2d 269, 272 (Ind.1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). There is a strong presumption that counsel rendered adequate assistance. *Id.* "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." *Id*. at 273. "Counsel's performance is evaluated as a whole." *Lemond v. State*, 878 N.E.2d 384, 391 (Ind. Ct. App. 2007), *trans. denied*. To establish the prejudice prong of the test, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Sims v. State*, 771 N.E.2d 734, 741 (Ind. Ct. App. 2002), *trans. denied*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." *Coleman*, 694 N.E.2d at 272.

## *I. Trial Counsel*

Bethea argues that trial counsel should have offered Seaton's deposition and sentencing order into evidence because they would show that Bethea did not know Seaton prior to the night of the offenses and that Seaton would have committed the offenses with or without Bethea's involvement. The State acknowledges that the trial court "may have been incorrect" in finding that Bethea knew that Seaton was seventeen. Appellee's Br. at 10.

However, the State argues that using a young woman to trick the victims into opening the door was reprehensible regardless of whether Bethea knew that Seaton was a minor.

In her deposition, Seaton stated that she did not know Bethea prior to the night of the robbery, which was consistent with Bethea's testimony at the sentencing hearing. However, we find no support for Bethea's assertion that Seaton would have committed the offenses without his involvement. Seaton stated that she thought the men were just going to ask for their money back and did not realize beforehand that they were armed and were going to commit a robbery. This was consistent with her statement to the police. It is true that the court found in sentencing Seaton that she was acting as an adult, but the court also found that she likely would not have committed the offenses without the involvement of the co-defendants. Thus, the deposition and sentencing order contained information that could have undermined Bethea's arguments, and offering them into evidence may have highlighted that information. Bethea has not persuaded us that trial counsel's failure to use these documents in his case was not an acceptable strategy.

## II. Appellate Counsel

Our supreme court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. *Wrinkles v. State*, 749 N.E.2d 1179, 1203 (Ind. 2001), *cert. denied*.

> When a petitioner claims the denial of effective assistance of appellate counsel because counsel did not raise issues the petitioner argues should have been raised, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a

13

> decision was unquestionably unreasonable. But this does not end our analysis. Even if we determine that counsel's choice of issues was not reasonable, a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail.

*Taylor v. State*, 840 N.E.2d 324, 338 (Ind. 2006) (citations and quotation marks omitted). We must determine "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues." *Gray v. State*, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006) (quotation marks omitted), *trans. denied*.

Bethea argues that the issue raised by appellate counsel was easily rejected by this court; that challenging the aggravators was an obvious issue but was not cogently argued; and that a challenge based on Appellate Rule 7(B) was also a viable and obvious issue. The summary of argument section of the appellant's brief on direct appeal consisted of one sentence: "The Court should be limited in sentencing the defendant on two Class B Felonies consecutively to thirty (30) years, which is the advisory sentence on a Class A felony (next highest felony)." Petitioner's Ex. 11 at 10. Most of the rest of the brief was devoted to discussion of statutory restrictions on consecutive sentences. On the last full page of the brief, appellate counsel stated that he "questions some of the aggravating factors found by the Court," specifically that the offenses were committed in the presence of a juvenile and that the offenses occurred in a residence. *Id*. at 13. However, appellate counsel did not cite the applicable standard of review, nor did he cite any authority concerning the propriety of these aggravating factors. Our opinion on direct appeal did not address the validity of the aggravators at all, presumably because the issue was so poorly presented.

14

We turn now to the issue of whether Bethea was prejudiced by appellate counsel's failure to cogently challenge the aggravating factors found by the trial court. Had the issue been properly raised on direct appeal, we would have reviewed the sentencing factors used by the trial court for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *reh'g granted on other grounds*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* One way that a trial court may abuse its discretion is by finding aggravating factors that are not supported by the record. *Id.* at 490-91. If the trial court has used improper aggravating factors, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

Bethea argues that appellate counsel should have challenged the trial court's finding that he knowingly used a juvenile in the commission of the crime. As noted above, the State concedes that the evidence does not show that he knew that Seaton was a minor. However, the record also does not support Bethea's contention that Seaton would have committed the offenses without his involvement. At a minimum, Bethea knew that he was using a young woman to trick the victims into opening their home to two armed robbers, and this could properly be considered as part of the nature and circumstances of the offenses.

The State also concedes that the trial court mischaracterized Bethea's criminal history in that it found that he had been convicted of possession of cocaine with intent to distribute, when he had actually pled guilty to the lesser included offense of possession of cocaine.

Nevertheless, possession of cocaine is still a felony-level offense in Indiana.[3] We do not think that this mischaracterization is significant in light of Bethea's complete criminal history, which includes convictions for obstructing justice, petit larceny, and being an accessory after the fact. He has had two adjudicated probation violations and several probation violations and criminal charges that have remained unresolved apparently at least in part because he has moved from state to state. We agree with the trial court that Bethea's record shows a disdain for the law, and we do not believe the mischaracterization of one of the convictions affected the overall sentence.

Bethea argues that his difficult childhood – in which he was exposed to poverty, abuse, and institutionalization – should have been identified as a mitigating factor or, alternatively, that this evidence negated the trial court's finding that his failure to benefit from services was an aggravating factor. We agree with Bethea that the record does not support the trial court's finding that he received "extensive services" as a juvenile. Sentencing Tr. at 75. Bethea testified that he spent most of his childhood in foster homes or juvenile facilities, that he was abused in several of these placements, and that he was never offered treatment for his drug addiction. The State did not present any evidence concerning

---

[3] In Indiana, possession of cocaine is a class D felony and may be elevated to a class A, B, or C felony if certain additional facts are proven. Ind. Code § 35-48-4-6. Bethea was sentenced to three years, which is within the sentencing range of a class C or D felony in Indiana. Ind. Code § 35-50-2-7 (sentencing range for class D felony is six months to three years); Ind. Code § 35-50-2-6 (sentencing range for class C felony is two to eight years).

the nature of any services provided to Bethea as a juvenile or present any evidence contradicting his account of his childhood years.[4]

However, the trial court also considered Bethea's failed attempts at rehabilitation as an adult. Bethea has been in and out of jail throughout his adult life. He has been on probation multiple times and has two adjudicated violations. He has additional violations and criminal charges pending. As noted by the trial court, Bethea has not voluntarily sought treatment for his addictions, and he has been vague at best as to whether he even has a mental health condition that is in need of treatment. Although we disagree with the trial court's characterization of Bethea's juvenile years, evidence of a difficult childhood generally warrants little, if any, mitigating weight. *Coleman v. State*, 741 N.E.2d 697, 700 (Ind. 2000), *cert. denied*. Bethea's adult years show a disdain for the law, failure to benefit when shown leniency, failure to take proactive steps to address his addictions, and a tendency to move from state to state rather than answer to pending criminal charges or probation violations. Given the significant evidence of failure to benefit from rehabilitation as an adult, we do not believe the unsupported findings concerning the services he received as a minor would have resulted in a different sentence.

The final aggravating factor that Bethea challenges is the injury to Dailey. He argues that the trial court erred by treating the injury as an aggravating factor because that was an

---

[4] Attached to the PSI were several documents that appear to relate to Child In Need of Services-type cases in New York and Virginia. Most of these documents appear to pertain more to Bethea's mother than Bethea himself. It appears that he had an Individualized Education Plan at some point, but the remaining documents are vague at best as to what other services were provided to Bethea. The State has not identified any specific portion of these documents that would support the trial court's finding that Bethea received extensive services.

17

element of the burglary charge that was dismissed pursuant to his plea agreement.[5]  In support, he cites *Farmer v. State*, 772 N.E.2d 1025 (Ind. Ct. App. 2002), and *Roney v. State*, 872 N.E.2d 192 (Ind. Ct. App. 2007), *trans. denied*.  In *Farmer*, the defendant was charged with attempted murder, burglary resulting in bodily injury, intimidation, and resisting law enforcement.  He pled guilty to attempted murder, and the State agreed to dismiss the other charges.  In sentencing Farmer, the trial court found as aggravating factors that the offense occurred in the victim's home, that he threatened the victim, and that he disregarded an officer's order.  On appeal, Farmer argued that these were not valid aggravators because they were elements of the dismissed charges.  The panel agreed, holding that if he "were sentenced more harshly in reliance upon these facts, he would not receive the full benefit of his plea agreement."  *Farmer*, 772 N.E.2d at 1027.

In *Roney*, the defendant was involved in a robbery during which Chris Brown was killed.  Roney was charged with murder and felony murder of Brown.  Roney pled guilty to murder, and the State agreed to dismiss the felony murder charge and not to file any additional charges relating to the incident.  The court found several aggravating factors, including the fact that Roney could have been charged with several additional offenses, such as robbery and criminal confinement.  On appeal, Roney argued that this was an improper aggravating factor because it circumvented his plea agreement.  The panel agreed that the

---

[5] In his brief, Bethea refers only to the injury to "the victim."  Appellant's Br. at 15.  We presume that he is referring to Dailey because the burglary charge specifically alleged that she was injured and made no reference to Gates.

trial court had effectively circumvented the plea agreement by considering uncharged conduct when the State had agreed not to file additional charges. *Roney*, 872 N.E.2d at 201.

Both *Farmer* and *Roney* cited *Carlson v. State*, 716 N.E.2d 469 (Ind. Ct. App. 1999). In *Carlson*, the defendant was charged with dealing in cocaine as a class A felony and as a class B felony. Carlson pled guilty to the class B felony. The State dismissed the class A felony and agreed to a sentence cap of fifteen years. At sentencing, the trial court identified several aggravators, including the amount of cocaine that Carlson had possessed. On appeal, Carlson argued that this was an improper aggravating factor because the amount of cocaine was the fact that distinguished the class A and class B felony offenses. We held that when a defendant pleads guilty to a lesser-included offense, the trial court may not attempt to sentence the defendant as if he had pled guilty to the greater offense by using the distinguishing element as an aggravating factor. *Id*. at 472-73.[6]

---

[6] *Carlson* relied on *Hammons v. State*, 493 N.E.2d 1250 (Ind. 1986), *Conwell v. State*, 542 N.E.2d 1024, 1025 (Ind. Ct. App. 1989), and *Miller v. State*, 709 N.E.2d 48, 50 (Ind. Ct. App. 1999). In *Hammons*, the defendant was charged with murder, but the jury found him guilty of the lesser-included offense of voluntary manslaughter. In sentencing Hammons, the trial court clearly and repeatedly expressed its belief that the jury verdict was erroneous, and therefore imposed the maximum sentence. Our supreme court held that this was an improper aggravating factor because the trial court was attempting to compensate for the jury's perceived leniency. *Id.* at 1253. At the time *Hammons* was decided, the presumptive sentencing scheme was in effect. Because the trial court had failed to identify any valid aggravators, our supreme court reduced Hammon's sentence for voluntary manslaughter to the presumptive sentence. *Id*.

*Conwell* extended *Hammons* to the guilty plea context. In *Conwell*, the defendant was charged with class B felony burglary, but pursuant to a plea agreement, he pled guilty to burglary as a class C felony. We held that the court could not consider the fact that the offense occurred in a residence because that is the fact that distinguishes the class B and class C felonies. *Conwell*, 542 N.E.2d at 1025. In *Miller*, the trial court considered the fact that the defendant had a record of subsequent arrests and was found in possession of a large amount of cocaine at the time of one of his arrests. We held that the trial court could consider his record of arrests even though the resulting charges had been dismissed pursuant to a plea agreement; however, the court could not consider the quantity of drugs found in his possession because he pled guilty to possession of those drugs as a lesser-included offense of dealing. *Miller*, 709 N.E.2d at 49-50.

We believe that *Farmer* and *Roney* stretched the rule in *Carlson* too far. *Carlson* involved a guilty plea to a lesser-included offense. In any event, Carlson could not have been convicted of both the class A and class B felonies. The trial court sentenced Carlson as if he had been convicted of the class A felony despite the fact that a conviction on the class A felony was precluded by his conviction of the class B felony. *Farmer* and *Roney* prohibited trial courts from considering conduct that was part of the nature and circumstances of the offense and could have resulted in additional convictions.

*Farmer* and *Roney* expressed concern that the defendant would not get the full benefit of his plea agreement if the trial court relied on dismissed or unfiled charges at sentencing. We disagree with that rationale. The benefit that the defendants agreed to was that they would not be convicted of certain offenses. No agreement was made concerning what factors the trial court could consider at sentencing. Rather than upholding the plea agreements as written, *Farmer* and *Roney* actually wrote in additional terms.

*Farmer* and *Roney* have taken us down a slippery slope. *Carlson* held that when a defendant pleads guilty to a lesser-included offense, the trial court could not use the distinguishing element that would otherwise elevate the offense as an aggravating factor. *Carlson*, 716 N.E.2d at 473. *Farmer* extended that to hold that trial courts may not use any other facts or circumstances pertaining to charges that are dismissed pursuant to a plea agreement as aggravating factors. *Farmer*, 772 N.E.2d at 1027. *Roney* extended this concept still further by holding that when a plea agreement is entered, the trial court cannot consider *charged or uncharged* criminal conduct as an aggravating factor. *Roney*, 872 N.E.2d at 201.

Taken to their logical conclusion, *Farmer* and *Roney* would result in prohibiting trial courts from considering conduct admitted by the defendant, conduct that was unknown to the State at the time the plea agreement was entered, or conduct that was not part of the same episode of criminal conduct. These restrictions have no basis in Indiana law.

Bethea pled guilty to two charges in exchange for the dismissal of the other seven charges. Neither of the charges to which he pled guilty were lesser-included offenses of the dismissed charges. As to his sentence, his plea agreement states, "The parties have no agreement as to any sentence that the Defendant would receive, and the same is left to the discretion of the trial court." Petitioner's Ex. 3 at para. 6. We decline to follow *Farmer* and *Roney* and hold that it was not impermissible for the trial court to consider Dailey's injury as an aggravating factor. In addition, we note that neither Bethea nor the dissent contends that the trial court improperly considered Gates's injury as an aggravating factor.

Bethea also argues that appellate counsel should have challenged his sentence pursuant to Appellate Rule 7(B), which authorizes us to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We conduct an independent review of the sentence, considering any factors appearing in the record. *Holloway v. State*, 950 N.E.2d 803, 806 (Ind. Ct. App. 2011). Nevertheless, we recognize the special expertise of the trial court in making sentencing decisions, and we refrain from merely substituting our opinion for that of the trial court. *Davis v. State*, 851 N.E.2d 1264, 1267 (Ind. Ct. App. 2006), *trans. denied*. Maximum

21

sentences are generally reserved for the worst offenders, but this category encompasses a considerable variety of offenses and offenders. *Wells v. State*, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009), *trans. denied*. Our standard is not whether a worse offender could be imagined, but instead focuses "on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Id.* "The principal role of appellate review should be to attempt to leaven the outliers, … but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

Bethea's arguments concerning Appellate Rule 7(B) review essentially mirror the arguments already addressed: that Dailey's injury may not be considered, that the record does not support a finding that he knowingly used a juvenile in the commission of the offense, that his criminal record is not as serious as the trial court's findings indicate, and that his difficult childhood should counterbalance his failure to benefit from prior attempts at rehabilitation. As discussed above, each of these factors is either unproblematic or insignificant. Bethea stresses that we are authorized to consider "any other relevant factors," but he does not identify any additional factors that we should consider. Appellant's Br. at 13. In light of the factors supported by the record, which have already been discussed at length, we cannot say that Bethea's sentence is inappropriate or an outlier that warrants downward revision. Therefore, we conclude that Bethea was not prejudiced by appellate counsel's failure to challenge his sentence pursuant to Appellate Rule 7(B).

## Conclusion

Bethea has not shown that trial counsel was ineffective by not using Seaton's deposition and sentencing order; these documents also contained prejudicial information, and therefore, trial counsel had a strategic reason for not using them. Although appellate counsel overlooked sentencing factors that could have been challenged as an abuse of discretion or pursuant to Appellate Rule 7(B), Bethea was not prejudiced by this failure. We decline to follow *Farmer* and *Roney*, and we hold that the trial court properly considered the victims' injuries as aggravating factors. The remaining issues – the mischaracterization of one of Bethea's prior convictions, the lack of evidence that Bethea *knew* that Seaton was a minor, and the lack of evidence that he failed to benefit from services *as a juvenile* – are not significant enough to warrant a lesser sentence, as the remaining factors fully warrant the sentence imposed. Therefore, we affirm the denial of post-conviction relief.

Affirmed.

MAY, J., concurs in result with separate opinion.

BROWN, J., dissents with separate opinion.

# IN THE

# COURT OF APPEALS OF INDIANA

CURTIS A. BETHEA,                          )
                                           )
    Appellant-Petitioner,          )
                                           )
        vs.                    )        No. 18A05-1107-PC-416
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Respondent.           )

**MAY, Judge, concurring in result**

I do not share Judge Crone's position that *Farmer* and *Roney* misapplied precedent and should not be followed; I believe the reasoning in those decisions is sound and that they are directly applicable to Bethea's sentencing. I therefore agree with the dissent that the sentencing court should not have circumvented Bethea's plea agreement by enhancing his sentence based on conduct that was the subject of charges the State had dismissed in order to obtain Bethea's guilty plea.

However, I believe there were sufficient proper aggravators before the sentencing court to permit Bethea's sentence despite the *Farmer/Roney* violation. I therefore respectfully concur in the result.

# IN THE

# COURT OF APPEALS OF INDIANA

CURTIS A. BETHEA, )
)
    Appellant-Petitioner, )
)
        vs. )     No. 18A05-1107-PC-416
)
STATE OF INDIANA, )
)
    Appellee-Respondent. )

**BROWN, Judge, dissenting**

I concur with the majority as to its decision that Bethea's trial counsel was not ineffective, but I respectfully dissent as to its decision regarding the effectiveness of Bethea's appellate counsel. As noted by the majority, the Indiana Supreme Court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. Wrinkles v. State, 749 N.E.2d 1179, 1203 (Ind. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1610

(2002). Where, as here, an ineffectiveness claim is based upon the second category, we employ the following two-part test to judge counsel's performance: "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues." Gray v. State, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006) (quoting Timberlake v. State, 753 N.E.2d 591, 605-606 (Ind. 2001) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986))), trans. denied (quotation marks omitted). In so doing, we "must be 'particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available . . . .'" Id. Thus, as noted in Gray, the test may also be stated as whether "appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision." Id. If deficient performance is so found, the defendant must then establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 1219.

In this case, I find that Bethea has met his burden on a number of grounds regarding the ineffectiveness of his appellate counsel. Initially, Bethea correctly notes that the sole issue cogently raised by appellate counsel on direct appeal, namely, that under Ind. Code § 35-50-1-2, the trial court erred in sentencing him because the crimes he was convicted of constituted a single episode of criminal conduct, was easily disposed of on direct appeal because that statute did not apply to Bethea's convictions. Bethea v. State, No. 18A02-0703-

27

CR-247, slip op. at 3 (Ind. Ct. App. Nov. 15, 2007) (holding that "[b]ecause he pled guilty to a crime of violence as defined in [Ind. Code § 35-50-1-2(a)(12)], Bethea's two consecutive sentences are not subject to the limitation in Indiana Code section 35-50-1-2"). Thus, Bethea argues that "nearly any viable claim would have been a stronger claim . . . ." Appellant's Brief at 11.

Bethea cites multiple issues which I find to be significant and obvious from the record constituting deficient performance and which prejudiced Bethea. Specifically, Bethea argues that his appellate counsel was ineffective for failing to: (A) challenge certain improper sentencing factors; and (B) challenge his sentence as inappropriate under Ind. Appellate Rule 7(B).

A.     Unchallenged Improper Sentencing Factors

Bethea makes a number of arguments for the proposition that appellate counsel should have raised the issue that the court abused its discretion in sentencing him, each of which arguments the majority finds to be lacking. Bethea was sentenced pursuant to the current advisory sentencing scheme in which a court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). If the trial court

has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

In particular, I am at odds with Judge Crone's choice to decline to follow our previous decisions in Roney v. State, 872 N.E.2d 192, 201 (Ind. Ct. App. 2007), and Farmer v. State, 772 N.E.2d 1025, 1027 (Ind. Ct. App. 2002), regarding a trial court's decision to use the harm, injury, and loss suffered by the victims as an aggravating circumstance. In Farmer, defendant Shane Farmer, pursuant to a plea agreement with the State, pled guilty to attempted murder, and in exchange the State dismissed charges of burglary resulting in bodily injury, intimidation and resisting law enforcement. 772 N.E.2d at 1026. At sentencing, the trial court identified the following aggravators: (1) that the offense occurred in the victim's home; (2) that Farmer failed to release the victim upon the officer's command; and (3) that Farmer screamed threats that the victim was going to die. Id. at 1027. On appeal, Farmer argued that "the sentencing court's reliance on facts that supported the burglary, intimidation and resisting law enforcement charges dismissed as part of his plea agreement essentially circumvents the plea agreement and is therefore improper." Id. We agreed, holding that sentencing Farmer more harshly in reliance upon facts which related to the dismissed charges resulted in Farmer not receiving "the full benefit of his plea agreement," and that we would

give effect to the parties' intent because "[a] plea agreement is a contract, binding upon both parties when accepted by the trial court." Id.

We similarly found that the court abused its discretion in sentencing the defendant in Roney when it considered "the multiple injuries inflicted upon [the victim] and the fact that the State could have charged Roney with more crimes, namely robbery and criminal confinement." 872 N.E.2d at 200. We held that "the trial court's consideration of these uncharged crimes violates the plea agreement, under which the State agreed to file no additional charges arising out of the incident," because when "a trial court accepts a plea agreement under which the State agrees to drop or not file charges, and then uses facts that give rise to those charges to enhance a sentence, it in effect circumvents the plea agreement." Id. at 201.

Similarly here, Bethea, pursuant to a plea agreement with the State, pled guilty to one count of robbery against Gates as a class B felony and one count of criminal confinement with respect to Dailey as a class B felony,[7] and in exchange the State agreed to dismiss the other charges filed against Bethea, which again included burglary resulting in bodily injury as a class A felony, armed robbery as a class B felony, two counts of criminal confinement as class B felonies, two counts of intimidation as class C felonies, and auto theft as a class D felony. However, in its sentencing order the court identified the following aggravator:

---

[7] The robbery charging information charged Bethea as a class B felony because the act against Gates was "committed while the defendant was armed with a deadly weapon, to-wit: a gun . . . ." Direct Appeal Appendix at 14. The criminal confinement charging information charged Bethea as a class B felony because Bethea committed the act against Dailey while "being armed with a deadly weapon, to wit: a gun . . . ." Id. at 17.

30

> The harm, injury, and loss suffered by the victims was significant and greater than that otherwise anticipated by the offenses; in addition to being armed at gunpoint, the male victim was beaten and "pistol whipped" . . . in addition to being confined at gunpoint, the female victim was injured by being pulled out of bed and thrown to the floor, resulting in medical treatment. [Bethea] committed the offenses inside the victims' residence. The Court gives this factor very significant weight, as [Bethea] acted in a manner more violent than required for the offenses and caused significant injuries to the victims.

Direct Appeal Appendix at 219.

Thus, the court circumvented Bethea's plea agreement by enhancing his sentence based upon conduct which was the subject of dismissed charges. Specifically, the court recited the injuries caused to Dailey and the fact that the offenses were committed inside the victims' residence; however, this conduct was the subject of Count I, burglary resulting in bodily injury, which also was the only class A felony with which Bethea had been charged. Indeed, it would be reasonable to surmise that the dismissal of Count I was at the very core of Bethea's decision to plead guilty. Accordingly, I would hold that it was deficient performance on the part of Bethea's appellate counsel to fail to challenge this aggravator, which the court accorded "very significant" weight, and I would apply the rule from Farmer and Roney to Bethea's sentence.

In addition, there were other problems with most of the other significant aggravating circumstances cited by the court at sentencing, which only made the issue of abuse of discretion more obvious and which provides additional empirical evidence that this decision (or lack thereof) was not of a strategic nature but rather was the case of deficient performance. First, the court found as an aggravator that he "has a conviction for Possession with Intent to Distribute Cocaine as a felony in Norfolk, Virginia" and assigned it

"significant weight." Direct Appeal Appendix at 218. However, as noted by Bethea he actually pled guilty to and was convicted of only possession of cocaine.

Second, the court's sentencing order stated that Bethea is among "the very worst offenders," and that he therefore should be sentenced to the maximum, that "the State of New York provided extensive services to [Bethea] as a juvenile, although they were not correctional in nature. [He] did not take advantage of those services." Id. at 220. As argued by Bethea, "[t]he record clearly shows that [he] suffered a horrific childhood" in which he "was abused physically, emotionally, and sexually as a child, both by his father and foster parents," and that it was therefore inexplicable that the court aggravated Bethea's sentence by noting that he "did not take advantage of those services," especially in that the court was effectively "ignoring the fact that [he] was abused by these same service providers . . . ." Appellant's Brief at 18. Indeed, the majority and I are in agreement on the point where it is noted:

> Bethea argues that his difficult childhood – in which he was exposed to poverty, abuse, and institutionalization – should have been identified as a mitigating factor or, alternatively, that this evidence negated the trial court's finding that his failure to benefit from services was an aggravating factor. We agree with Bethea that the record does not support the trial court's finding that he received "extensive services" as a juvenile. Sentencing Tr. at 75. Bethea testified that he spent most of his childhood in foster homes or juvenile facilities, that he was abused in several of these placements, and that he was never offered treatment for his drug addiction. The State did not present any evidence concerning the nature of any services provided to Bethea as a juvenile or present any evidence contradicting his account of his childhood years.

*Supra*, slip op. at 16-17. However, to the extent that the majority's conclusion that these unsupported findings would not "have resulted in a different sentence" because the court

"also considered Bethea's failed attempts at rehabilitation as an adult," especially when considered in conjunction with the other sentencing problems discussed above, I disagree. Id. at 17.

Based on the numerous aggravators which the court found to be significant and which are questionable, I believe that it is obvious from the face of the record that the issue of whether the court abused its discretion in sentencing Bethea should have been raised on appeal, and I cannot find a strategic reason for having not done so. Also, taken as a whole, due to the significance the court attached to each of these aggravators I believe there is a reasonable probability that, had the issue been presented on appeal, the result would have been favorable to Bethea. Indeed, these aggravators constitute most of the significant aggravators identified by the court in finding Bethea to be among the very worst offenders and imposing a maximum sentence. Accordingly, I conclude that Bethea's appellate counsel was ineffective in failing to present cogent argument that the court abused its discretion in sentencing him.

B.      Failure to Challenge Appropriateness of Aggregate Sentence

Bethea also points to appellate counsel's failure to request this court to review his sentence under Ind. Appellate Rule 7(B) as a separate ground in support of his argument that he received ineffective assistance of appellate counsel. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to

33

persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

At sentencing, the court stated that it was "well aware that it should reserve the maximum sentence for the very worst offenders" and that Bethea, who was twenty-five years old at the time of the offenses, "fits within this category of offenders." Trial Transcript at 75. The court then, after weighing the aggravators and mitigators, imposed the maximum sentence of twenty years for each conviction, and it ordered that the sentences be served consecutively for an aggregate sentence of forty years.

Although Bethea does have a criminal history, it seems facially apparent that the court's decision to classify Bethea as among the very worst was error. Indeed, Bethea's presentence investigation report ("PSI") reveals that Bethea did not have a juvenile criminal history, and most of his criminal offenses were nonviolent in nature. In 2000, Bethea was charged with possession of marijuana as a class B misdemeanor in the State of New York. In 2001, Bethea pled guilty to obstructing justice, petit larceny, and possession of cocaine in the State of Virginia under separate cause numbers. Bethea was also found guilty of being an accessory after the fact on a robbery charge in that year. In addition to Bethea's convictions, the PSI also notes three instances in which the relevant authorities applied to revoke his probation. Finally, the PSI reveals that Bethea has active warrants issued for his arrest in the States of New York (stemming from charges filed in 2005) and in Virginia (stemming from a violation of probation).

Put simply, although Bethea does have a fairly significant criminal history, I believe that he is far from the very worst of offenders. The only conviction on Bethea's record which contains a violent element is his conviction for being an accessory after the fact to robbery. Although robbery itself is a violent crime, Bethea's accessory liability implies that his criminal act was not violent in nature. To be sure, Bethea's record does demonstrate a certain amount of contempt for the law in that he has multiple outstanding warrants for his arrest, but I do not believe that his record, taken as a whole, places him in the realm of the worst of the worst, and I find that Bethea has met his burden of demonstrating that a reasonable probability exists that, had this issue been presented on direct appeal, the outcome would have been different. Accordingly, I conclude that Bethea's appellate counsel was ineffective in failing to present an argument under Ind. Appellate Rule 7(B).

Thus, Bethea has demonstrated that he received ineffective assistance of his appellate counsel when counsel failed to brief arguments that the court abused its discretion in sentencing him and that Bethea's sentence was inappropriate in light of the nature of the offense and the character of the offender. I would reverse the trial court's denial of Bethea's petition for post conviction relief and resentence him accordingly.