**Rodney MIDDLETON, Appellant (Petitioner Below),**

v.

**STATE of Indiana, Appellee (Respondent Below).**

No. 49A02–9002–PC–75.

Court of Appeals of Indiana, Second District.

Feb. 27, 1991.

142

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Rodney Middleton appeals the denial of his petition for post-conviction relief.

We affirm.

## ISSUES

1. Whether there was a sufficient factual basis to support Middleton's guilty plea.

2. Whether the guilty plea court erred in not holding a comprehension hearing at the guilty plea proceeding or in refusing Middleton leave to withdraw his guilty plea.

3. Whether Middleton was denied effective assistance of counsel.

## FACTS

During the guilty plea colloquy Middleton advised the guilty plea court that he "really use it", Record at 92, referring to heroin. Middleton's responses to questions posed by the court at that hearing were mainly, "yes, sir" although he engaged in some dialogue when a question arose whether, on the occasion of the offense to which Middleton was pleading guilty, he possessed the heroin with the intent to use it or to distribute it. At the sentencing hearing Middleton moved to withdraw his plea. The court denied the motion and sentenced Middleton to nineteen (19) years for the class B felony. Middleton filed a petition for post-conviction relief.

At the post-conviction hearing Middleton testified he was under the influence of heroin at his guilty plea hearing. His guilty plea counsel testified Middleton's behavior on the day of his guilty plea grew progressively inappropriate. He also testified he advised the guilty plea court just prior to the court's acceptance of Middleton's plea on the day of the sentencing hearing that he now questioned Middleton's ability to understand the consequences of his guilty plea.

The post-conviction court denied Middleton's petition. He appeals.

## DISCUSSION

### I.

■ Middleton claims the factual basis for his guilty plea is deficient because he was making a "best-interest plea." The guilty plea record supports the post-conviction court's contrary determination. The State's factual basis recited that the heroin in Middleton's possession was 4.159 grams of nineteen percent pure heroin and that the quality of local street heroin is generally less than one percent pure. Detective Terrell also advised "that [this] heroin would be cut between ten and fifteen times which would of given us a total of six-five [sic] grams which would have been broken down to thirty dollar dosages of approximately point-one-five-zero grams (.150) which would have came up to approximately four hundred and forty doses of thirty dollar bindles of heroin." Record at 95.

Although Middleton advised the court he "was going to use it [the heroin]," Record at 92, he also acknowledged he understood that by entering a plea of guilty he was telling the court he was guilty of the offense, the accuracy of the factual basis recited by the deputy prosecutor, and that "what I had it for to cut it and to sell." Record at 93. He also acknowledged he was not "saying that now because [the court] asked [him]." Record at 94–95.

Upon review we can only conclude the post-conviction court did not err when it concluded a sufficient factual basis existed for Middleton's plea of guilty to possessing heroin with the intent to deliver.

### II.

#### A.

Middleton claims the guilty plea court erred because it failed to inquire during the guilty plea proceedings whether he was under the influence of drugs or alcohol.

Our supreme court specifically refused to require trial judges to make such an inquiry as part of the determination of the voluntariness of a plea in *Patterson v. State* (1986), Ind., 500 N.E.2d 1191. Rather, the requirement is that

[w]here the court conducting a guilty plea hearing, either from its own knowledge or facts presented to it, has reasonable grounds for believing the defendant does not have sufficient comprehension to understand the proceedings, it shall immediately hold a hearing to determine whether the defendant has that ability. *Lloyd v. State* (1979), 270 Ind. 227, 383 N.E.2d 1048.

*Patterson*, 500 N.E.2d at 1193.

■ Applying this standard, the guilty plea court did not err because the record fails to establish the prerequisite the court had reasonable grounds for believing Middleton did not have sufficient comprehension to understand the guilty plea proceedings. While many of Middleton's responses during his guilty plea colloquy with the guilty plea court were "yes sirs", that in and of itself is not unusual given the nature of the standard questions propounded to a defendant. Further, Middleton quickly understood the significance of his answer that he possessed the heroin described in the count of the information to which he was pleading guilty for his own use vis-a-vis his guilty plea. When the guilty plea court advised him "[i]f it was just for use why I can't accept your guilty plea[,]" record at 92, Middleton quickly grasped the situation and made appropriate answers to questions directed to whether or not he possessed the heroin for purposes of delivery. Thus, the record is devoid of anything at the guilty plea hearing which imposed a duty upon the guilty plea court to hold a hearing to determine if Middleton had sufficient comprehension to understand the proceeding.

Further, the record is devoid of evidence which compels the conclusion the guilty plea court was informed at any time prior to the acceptance of Middleton's guilty plea (at the commencement of the sentencing hearing) of the contention Middleton was under the influence of heroin at the time of his guilty plea proceeding. Counsel testified:

Q. You told Judge Tranberg you believed him to be under the influence of drugs?

A. On the date of the sentencing, looking back on his conduct after his original enter [sic] of the plea and then on the date of sentencing his behavior was and I'm not any expert in this area, but I thought his behavior was more inappropriate and at that point he was—his orientation and he had some problems. I was telling him things and he was responding to me inappropriately and I told Judge Tranberg.

Record at 278–79.

Q. And that also concerned you enough to advise Judge Tranberg before the sentencing?

A. I told him that he knew me and I didn't come in with these kind of things, but the guy was inappropriate and I thought he was going to have a problem with this case if he proceeded.

Record at 279.

Q. Well, looking back on it now, do you see that he was—or do you have a feeling that he was under the influence of drugs, or, at least, in some incapacitating state so that he did not freely and intelligently plead guilty, did not understand all of the consequences, particularly the penalty?

A. Looking back, of course, it's a lot plainer. At the time of his guilty plea, later in that morning of his guilty plea, there's a high suspicion that he was inappropriate and no matter what I was saying to him, he seemed to be responding inappropriately to the judge. On the date of his sentencing there is no question he was inappropriate and I tried to do the best I could to bring that to the attention of the Court. . . .

Record at 280. Finally, on cross-examination by the State, Middleton's counsel stated:

I know before the sentencing there was considerable time spent in the Judge's chambers, not on the record, discussing what I thought to be inappropriate behavior, and expressing some serious concerns about whether he knew where he was that morning on his sentencing.

Record at 281. Thus, there is no evidence counsel advised the guilty plea court at any time prior to the plea being accepted that, in counsel's opinion, Middleton was under the influence of heroin at the time of his guilty plea proceeding such that Middleton could not make a knowing, voluntary, and intelligent plea.

**B.**

■ Middleton also claims the guilty plea court erred when it refused him permission to withdraw his plea after the plea was accepted because he was under the influence of heroin at the time he offered the plea.

The post-conviction court found Middleton had ingested heroin on the day of his guilty plea but that he was not impaired at the time of his plea. This determination, too, is supported by the record. As previously noted, many of Middleton's responses during his guilty plea colloquy with the guilty plea court were "yes sir." However, that in and of itself is not unusual given the nature of the standard questions propounded to a defendant at a guilty plea hearing. Nevertheless, such responses do not lend themselves to a determination of a defendant's ability to comprehend the proceeding. The instant record contains more. Middleton initially advised the court he possessed the heroin in question for his use. However, he quickly understood the significance of that answer vis-a-vis his guilty plea. When the guilty plea court advised him "[i]f it was just for use why I can't accept your guilty plea[,]" Record at 92, Middleton quickly grasped the situation and made appropriate answers to questions directed to whether or not he possessed the heroin for purposes of delivery. At the sentencing hearing while Middleton protested he was "up" on heroin at his guilty plea hearing his counsel, in response to the court's query whether "if there was any question you would have brought it up to the Court's attention, after all you're an officer of this Court", replied, "That's right." Record at 106.

At his post-conviction hearing, Middleton testified he was ready for trial, although in his opinion his attorney was not. Middleton also stated that before he pled guilty it had been his intent to go through a jury trial while under the influence of heroin because, in his terms, "I'd been using drugs for the last eight years." Record at 259. A reasonable inference from this evidence is that Middleton had built a tolerance to the effects of heroin.

There is also evidence he drove the mother of his child to her employment immediately prior to driving to court for trial.

This evidence, along with the inferences reasonably drawn therefrom, supports the determination Middleton's ingestion of heroin had not so debilitated his mind as to render him incapable of making a knowing, voluntary and intelligent judgment. Therefore, the guilty plea court did not err in refusing Middleton leave to withdraw his guilty plea.

### III.

 Finally, Middleton argues his guilty plea was not knowingly, intelligently and voluntarily entered because his guilty plea counsel was ineffective. He bases this claim on his attorney's failure to question Middleton's competency at the guilty plea proceeding.

At the post-conviction hearing the guilty plea counsel testified Middleton's answers were inconsistent with his plea on the question of possession for use rather than delivery. However, at that time, counsel did not attribute the discrepancy to Middleton's drug intoxication. Counsel's concerns about Middleton's competency developed as a matter of hindsight:

Q. Did you have a conversation with [Middleton] after that? After the plea was taken?

A. Yes.

Q. And perhaps he was waiting for the Probation Department?

A. Yes.

Q. Did you realize at that time that perhaps he might have been under the influence of drugs at that time, then?

A. The longer the morning went, the more inappropriate his behavior became.

Record at 277. He later reiterated his opinion that Middleton was "fine early in the morning, but the longer we stayed in court, it was obvious that he was—he just wasn't—" Record at 279. Based upon this evidence the post-conviction court reasonably concluded that, absent Middleton's claim of intoxication to his counsel, there were insufficient indications of Middleton's indulgence to hold his counsel incompetent for failing to object to proceeding with the guilty plea hearing.

Further, the post-conviction court reasonably concluded any incompetence on behalf of Middleton's counsel did not impact upon his guilty plea. Middleton was originally charged with attempted murder, a class A felony, conspiracy to commit dealing in heroin, a class A felony, possession with intent to deal heroin, a class A felony, possession of heroin, a class C felony, resisting law enforcement, a class D felony, and resisting law enforcement, a class A misdemeanor. Subsequently, an habitual offender count was filed. The plea agreement allowed Middleton to plead guilty to possession with intent to deliver heroin as a class B felony, and as covered in Count III of the information, and required the State to dismiss all other counts, including the habitual offender count. Thus, considering the possible period of incarceration Middleton was facing if convicted on all counts, including the habitual offender count, a reasonable inference is that he would have accepted the guilty plea under any turn of events; i.e., he failed to meet his burden of proving that, but for his counsel's assumed deficient performance, he would have insisted on going to trial. *Willis v. State* (1986), Ind.App., 498 N.E.2d 1029.

Judgment affirmed.

RATLIFF, C.J., and BUCHANAN, J., concur.