## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2015, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Eric C. Bohnet
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jon Colin Blauvelt,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

January 30, 2015

Court of Appeals Cause No.
53A04-1407-PC-308

Appeal from the Monroe Circuit Court

The Honorable Marc R. Kellams, Judge

Cause No. 53C02-1103-PC-548

**Brown, Judge.**

[1] Jon Colin Blauvelt appeals the denial of his petition for post-conviction relief. Blauvelt raises four issues, which we consolidate and restate as whether the post-conviction court erred in denying his petition for relief. We affirm.

## Facts and Procedural History

[2] On October 22, 2008, Blauvelt attempted to murder Robin Shepherd and Marilyn Shepherd by pouring gasoline in and about they dwelling occupied and setting the dwelling on fire with the specific intent to kill them. Robin was sleeping and pregnant at the time. Blauvelt also knowingly or intentionally attempted to commit the crime of feticide by pouring the gasoline and setting the gasoline aflame or by setting the dwelling on fire. The fire damaged Robin's dwelling and resulted in bodily injuries to Robin.

[3] On October 24, 2008, the State charged Blauvelt with Count I, attempted murder of Robin as a class A felony; Count II, attempted murder of Marilyn as a class A felony; and Count III, arson resulting in bodily injury as a class A felony. On March 4, 2009, the State also charged Blauvelt with Count IV, attempted feticide as a class C felony.

[4] On June 26, 2009, Blauvelt's counsel, Attorney Patrick Schrems, filed a notice of intent to offer insanity as a defense. On August 12, 2009, Matt Oliver, PhD, HSPP, filed a mental health evaluation of Blauvelt, and on October 14, 2009, Dr. Greg Sidell also filed a mental health evaluation.

[5] On January 13, 2010, Blauvelt signed a plea agreement in which he agreed to plead guilty as charged. The agreement specified that the total sentence was not

to exceed sixty years and that Blauvelt "waive[d] right to appeal guilty plea and sentence." Appellant's Appendix at 32. That same day, the court held a hearing. Blauvelt's counsel withdrew the defense of insanity. Upon questioning by the court, Blauvelt informed the court that he was taking Zoloft and Haldol and indicated that the medications did not in any way affect his ability to think. The court informed Blauvelt of his constitutional rights including the right to require the State to prove the charges against him beyond a reasonable doubt before being convicted. The court reviewed the charging information, and Blauvelt indicated that he understood the charges and pled guilty. At the end of the hearing, the court found Blauvelt's plea to be free, knowing, and voluntary, found a factual basis, and "continue[d] under advisement the entry of judgment and further sentencing pending the sentencing hearing." *Id.* at 61.

[6] On March 2, 2010, the court held a sentencing hearing. Blauvelt's counsel called Blauvelt's mother who testified regarding his mental illness. Blauvelt made a statement but the record indicates that the statement is inaudible. His counsel asked the court to consider his age and lack of criminal history as mitigators. The court stated:

> First of all I want to make note of the fact that [Blauvelt], when entering his plea of guilty, went through a long discussion with the Court with regard to his mental health issues and waived knowingly and intentionally any defenses that they might have raised. That doesn't preclude him from raising that as an issue to be considered in the matter of sentencing, but that in light of his actions, knew the difference between right and wrong, and intentionally perpetrated the actions which resulted in these outrageous crimes. . . . And I've

looked over the presentence and considered certainly the evidence submitted during the sentencing hearing and I concur in large part with the State in their analysis of the defendant's actions, the aggravating circumstances, which were set forth. It was a carefully planned out and thought set of actions.

*Id.* at 142.

[7] The court sentenced Blauvelt to thirty years each for Counts I, II, and III, and six years for Count IV, and ordered that the sentence for Count II be served consecutive to Count I, that the sentence for Count III be served concurrent with Counts I and IV, and that the sentence for Count IV be served concurrent with Counts I and III. The court sentenced Blauvelt to an aggregate sentence of sixty years.

[8] On March 30, 2011, Blauvelt, *pro se*, filed a petition for post-conviction relief. On September 17, 2013, Blauvelt by counsel filed an amended petition for post-conviction relief alleging that the trial court improperly accepted his guilty plea and that his trial counsel was ineffective.

[9] On March 5, 2014, the court held an evidentiary hearing at which Blauvelt's counsel requested that the file from the direct criminal proceedings be entered into evidence or that judicial notice be taken of the file, and the court stated: "so

noted."[1] Transcript at 22. Blauvelt testified that he pled guilty because he was willing to accept responsibility for the arson, he "didn't want to drag Robin . . . Shepard through . . . what could have been the trial," and he "wasn't trying to waste any more time or energy or money from the Court." *Id.* at 2. He testified that he did not understand at that time that he was pleading guilty to attempted murder as well as arson because he was on three different medications: Zoloft, an antidepressant, Haldol, an antipsychotic, and Cogentin, which he understood was used to help stabilize the Haldol. He testified that the medications significantly interfered with his ability to comprehend and understand things, that he did not understand that he was confessing to having set the fire with the specific intent to kill anybody, and that a psychologist in the Monroe County Jail evaluated him a few weeks after his arrest and diagnosed him with schizophrenia, an unspecific personality disorder, and depression. When asked to describe the side effects of his medications, Blauvelt stated:

> Significant side effects. Including lethargy, confusion, it crushed my emotional capacity to feel things, it made me sleep twenty (20) hours a day. It made it largely impossible to be able to express myself, my thoughts or my feeling as well as understand what was going on

---

[1] The transcript of the guilty plea hearing is contained in the appellant's appendix but is missing pages 4 and 18. The transcript of the sentencing hearing is contained in the appellant's appendix but is missing pages 51, 52, 53, and 77. The record does not contain a copy of the presentence investigation report or the mental health evaluations.

around – well, what was being asked to me beyond just simple yes or no questions.

*Id.* at 5-6.

[10] On June 6, 2014, the court denied Blauvelt's petition. The order states in part:

> [Blauvelt] cites three reasons to find deficient performance: (1) failure of trial counsel to provide effective representation regarding issues pertaining to [Blauvelt's] mental illness and medications, (2) counsel advised [Blauvelt] to accept a plea deal for counts for which there was insufficient evidence of intent, and (3) failure to make an effective defense at sentencing.
>
> Regarding the first claim, counsel filed a Notice of Intent to offer Insanity as a Defense, indicating that [trial counsel] was aware of [Blauvelt's] mental condition. Further, the transcript of the change of plea hearing indicates [trial counsel] had not ignored [Blauvelt's] mental state in representing [Blauvelt]. Tr. Proceedings 7. [Blauvelt] has not met his burden in overcoming the presumption that he received ineffective [sic] assistance in this regard.
>
> Regarding the second claim, [Blauvelt] asserts that there was insufficient evidence to show specific intent, but seeing as there was no trial for the prosecution to present evidence of this, the Court cannot baldly accept [Blauvelt's] assertion. Given the presumption of effectiveness of counsel and [Blauvelt's] failure to produce specific evidence that would indicate an inability for the state to prove specific intent, [Blauvelt] has not met his burden to show ineffective assistance for this claim.
>
> Regarding the third claim, counsel called a witness at the sentencing, called [Blauvelt] for an unsworn statement, and suggested mitigating factors to the Court. The decision to not cross-examine the State's witnesses is a tactical decision. *See Osborne v. State*, 481 N.E.2d 376, 380 (Ind. 1985). Counsel's tactical decisions and matters of strategy are discretionary and receive deferential review. *Stephenson v. State*,

864 N.E.2d 1022, 1031 (Ind. 2007) (quoting *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002)[, *reh'g denied*, *cert. denied*, 540 U.S. 830, 124 S. Ct. 69 (2003)), *reh'g denied*, *cert. denied*, 552 U.S. 1314, 128 S. Ct. 1871 (2008)]. Counsel's strategy and tactical decisions in presenting [Blauvelt's] defense at sentencing have not fallen below an objective standard of performance.

### B.    Improper Acceptance of Guilty Plea Claim

In *Owens v. State*, the defendant pled guilty with "yes" or "no" answers, and this was a sufficient factual basis to deny his request to withdraw the guilty plea at sentencing. 426 N.E.2d 372, 374 (Ind. 1981). [Blauvelt's] contention that his plea should not have been accepted because he did not provide a narrative description is without merit in light of *Owen*[*s*]. In respect to each charge, the Court asked [Blauvelt] if he understood the charge and how he pled to it. [Blauvelt] stated that he understood and pled guilty to each charge.

[Blauvelt] further contends that statements he made maintaining "it was not his intent to injure either [victim]" that were reported in his Presentence Investigation Report contradict his plea and therefore should have led the Court to reject his plea. Presentence Investigation Report 7. Unlike in *Owen*[*s*], [Blauvelt] never requested to withdraw his guilty plea, instead he asserts that statements made to a probation officer declaring that he did not intend to hurt anyone should negate the factual basis of his plea. Setting aside a guilty pleas [sic] after acceptance, but before sentencing in non-capital cases is left to the trial court's discretion. *See, e.g., Beech v. State*, 702 N.E.2d 1132, 1136 (Ind. Ct.[ ]App. 1998); *Harris v. State*, 671 N.E.2d 864, 869 (Ind. Ct.[ ]App. 1996)[, *trans. denied*]. Especially with no formal motion to withdraw the plea, the court did not abuse its discretion in accepting [Blauvelt's] guilty plea.

Appellant's Appendix at 4-5.

## *Discussion*

[11]    Before discussing Blauvelt's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[12]    The issue is whether the post-conviction court erred in denying Blauvelt's petition for relief. Blauvelt argues that: (A) his plea was not made knowingly, voluntarily, or intelligently; and (B) his trial counsel was ineffective.

### A. *Guilty Plea*

[13]  Blauvelt argues that his guilty plea was not knowingly and intelligently made because he did not understand that he was confessing to having acted with intent to kill. He contends that the trial court failed to take necessary steps to insure that he understood and intended his confession of specific intent. Without citation to the record, he asserts that the plea colloquy was severely abbreviated and consisted solely of the judge asking a single question for each charge which recited all of the elements of the offense along with Blauvelt's answer of yes to the complete charge. He asserts that, "[w]hile such a cursory exchange may suffice in a routine case, a more thorough examination should have been used in light of the special complexity of the attempted murder charge as well as the allegations of mental illness and the knowledge that he was taking anti-psychotic drugs." Appellant's Brief at 12. He points to his statements to the probation officer during the preparation of the presentence investigation report in which he alleges he insisted that he was innocent of the attempt charges, and argues that his denial of an intent to harm should have triggered a re-evaluation of the validity of the guilty plea because Indiana does not permit a criminal defendant to plead guilty while also maintaining his innocence. He also argues that, to the extent the trial court originally relied on the assurances of Blauvelt's trial counsel, the assurances have been cast in doubt by the fact that his trial counsel was then facing disciplinary charges for the same sort of neglect described by Blauvelt.

[14] The State argues that Blauvelt received notice of the specific intent element of attempted murder in the charging information and that Blauvelt acknowledged that he acted with specific intent. The State asserts that Blauvelt never moved to withdraw his plea and it would have been improper for the trial court to assume defense counsel's role and question Blauvelt whether he wanted to withdraw his plea. The State also contends that nothing in the medical records suggests that the medications interfered with Blauvelt's ability to read, follow a conversation, or understand legal proceedings.[2]

[15] Generally, a guilty plea constitutes a waiver of constitutional rights, and this waiver requires a trial court to evaluate the validity of every plea before accepting it. *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996). For the plea to be valid, the defendant's decision to plead guilty must be knowing, voluntary, and intelligent. *Id.* "Prior to the acceptance of a guilty plea, a trial court must determine that such plea is voluntarily made." *Curry v. State*, 674 N.E.2d 160, 161 (Ind. 1996), *abrogated on other grounds by Hall v. State*, 849 N.E.2d 466, 470

---

[2] The State does not argue that Blauvelt waived his arguments based upon the provision in the plea agreement stating that he "waive[d] right to appeal guilty plea and sentence." Appellant's Appendix at 32. The Indiana Supreme Court has held that a defendant may waive the right to appellate review of his sentence as part of a written plea agreement, but that this holding does not affect the very long-standing policy that a defendant who can establish in a post-conviction proceeding that his plea was unintelligent is entitled to have his conviction set aside. *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008). Given Blauvelt's arguments that he did not knowingly, voluntarily, and intelligently plead guilty, we address the merits of his arguments notwithstanding the waiver provision in the plea agreement.

(Ind. 2006). *See also* Ind. Code § 35-35-1-3(a) ("The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the plea is voluntary."). "Where the court conducting a guilty plea hearing, either from its own knowledge or facts presented to it, has reasonable grounds for believing the defendant does not have sufficient comprehension to understand the proceedings, it shall immediately hold a hearing to determine whether the defendant has that ability." *Patterson v. State*, 500 N.E.2d 1191, 1193 (Ind. 1986), *reh'g denied*.

[16] At the guilty plea hearing, the following exchange occurred:

> THE COURT: The Court has before it a plea and sentencing agreement in that regard. Mr. Blauvelt, raise your right hand for me and swear or affirm to tell the truth, the whole truth and nothing but the truth.
>
> [Blauvelt]: I do.
>
> THE COURT: All right. Tell me your full name.
>
> [Blauvelt]: Jon Colin Blauvelt.
>
> * * * * *[3]

---

[3] A portion of the omitted section is found on page 4 of the transcript which is missing from the appellant's appendix.

[THE COURT]: . . . you understand the four charges against you, the penalties upon conviction and your constitutional rights.

[Blauvelt]: Yes.

THE COURT: In addition to having them read to you in the video, you had an opportunity to review your rights also in writing on this written acknowledgement form.

[Blauvelt]: Yes.

THE COURT: Do you have any questions at this time about the four charges against you, the penalties upon conviction of those charges or your constitutional rights?

[Blauvelt]: No.

THE COURT: Now, counsel, there was, at some point, a motion to interpose the defense of insanity raised. [Blauvelt] was evaluated. Let's see? When was that? Well, I don't see it.

[Prosecutor]: Our records show the notice of intent to offer insanity as defense was filed on June 25, 2009. I think that the evaluations were done in August.

THE COURT: Thank you. Right, I show it file-stamped June 25th. Thank you. Consequently there was an evaluation of [Blauvelt] by two professionals. Greg Sidell, a medi[c]al doctor, reviewed or interviewed [Blauvelt] and filed his report October 14th, 2009. And his report concluded that "it is my opinion to a reasonable degree of medical certainty that [Blauvelt] was sane at the time of the alleged offense." He then talks about [Blauvelt's] behaviors and so forth. None of which would indicate that [Blauvelt] was incompetent or incapable in assisting in his own defense. Would you agree that's Dr. Sidell's report, [Blauvelt's counsel]?

[Blauvelt's Counsel]: Yes, Your Honor.

THE COURT: All right. Okay, thank you. We also had a report filed from Centerstone from Matt Oliver, PhD, HSPP, and he came to similar conclusions. Would you agree with that, too, [Blauvelt's counsel]?

[Blauvelt's Counsel]: Yes, Your Honor.

THE COURT: All right. So with regard to the motion to interpose the defense of insanity, [Blauvelt's counsel]?

[Blauvelt's Counsel]: Well, [Blauvelt] is certainly not a model picture of health, Your Honor. He certainly has sufficient capacity to appreciate and assist in his defense, so we would formally withdraw that defense at this time.

THE COURT: And you've been able to talk with him about his case?

[Blauvelt's Counsel]: Absolutely.

THE COURT: And been able to discuss with him the strengths and weaknesses and the benefits of going to trial?

[Blauvelt's Counsel]: Extensively.

THE COURT: And you believe that he has sufficiently understood and been able to converse with you and make decisions?

[Blauvelt's Counsel]: He's been engaged in the process, asks insightful questions, indicating to me that he has insight into what he's facing and the ramifications of his decisions here today.

THE COURT: Jon, do you agree with that?

[Blauvelt]: Yes, sir.

THE COURT: Okay. Are you willing to admit that you were sane as the law defines it at the time of the commission of the offense, that you knew the difference between right and wrong?

[Blauvelt]: Yes, sir.

THE COURT: Okay. And do you believe that you've been able to comprehend [your counsel's] discussions with you?

[Blauvelt]: Yes, sir.

THE COURT: And have been able to discuss what's happening and so forth?

[Blauvelt]: Yes, sir.

THE COURT: All right. And will you promise me that if there's anything that I ask you or say that you don't understand, you'll ask me to explain it further?

[Blauvelt]: Yes, sir.

THE COURT: Okay. Now you're not today under the influence of alcohol.

[Blauvelt]: No, sir.

THE COURT: Are you taking medications?

[Blauvelt]: Yeah, I'm taking medication.

THE COURT: Okay, do you know what medications you're taking?

[Blauvelt]: Zoloft and Haldol.

THE COURT: All right. And do you believe that those medications in any way effect your ability to think?

[Blauvelt]: No, sir.

Appellant's Appendix at 43-48. The court informed Blauvelt of his constitutional rights and questioned him regarding the plea agreement, and Blauvelt confirmed that he was pleading guilty to all four counts.

[17] Blauvelt's statements at the plea hearing were coherent and responsive. We cannot say that the trial court from its own knowledge or facts presented to it had reasonable grounds for believing that Blauvelt did not have sufficient comprehension to understand the proceedings. *See Middleton v. State*, 567 N.E.2d 141, 143 (Ind. Ct. App. 1991) (observing that "[w]hile many of [the defendant's] responses during his guilty plea colloquy with the guilty plea court

were 'yes sirs', that in and of itself is not unusual given the nature of the standard questions propounded to a defendant," and concluding that the record was devoid of anything at the guilty plea hearing which imposed a duty upon the guilty plea court to hold a hearing to determine if the defendant had sufficient comprehension to understand the proceeding), *trans. denied*.

Further, Blauvelt did not call his prior physician as a witness at the post-conviction hearing, and, other than Blauvelt's own testimony, the record does not reveal how any prescription drugs Blauvelt may have been taking affected his ability to voluntarily, knowingly, and intelligently plead guilty. We acknowledge that the Indiana Supreme Court published an order nine days after the sentencing hearing in this case which suspended Blauvelt's trial counsel from the practice of law for a period of not less than six months due in part to trial counsel's repeated lack of communication with clients and neglect of their cases. *See In re Schrems*, 922 N.E.2d 618 (Ind. 2010). Nonetheless, Blauvelt did not submit any testimony of his trial counsel at the post-conviction hearing. "Where trial counsel is not presented in support, the post-conviction court may infer that trial counsel would not have corroborated appellant's allegations." *Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989). Because Blauvelt did not call his trial counsel as a witness at the post-conviction hearing, the court was entitled to infer that counsel would not have corroborated Blauvelt's allegations.

To the extent that Blauvelt suggests he was not sufficiently informed of the requirement that he had to act with specific intent, we observe that the

transcript in the appellant's appendix is missing page 18, and that page 19 appears to be a continuation of the court's description of Count I. Specifically, page 19 of the transcript states:

> *with specific intent to kill* Robin Shepherd, attempt to commit the crime of murder by pouring flammable gasoline in and about the dwelling occupied by a sleeping Robin Shepherd and, or, by setting the gasoline aflame and, or, by setting the dwelling on fire, each act which in its own and, or, all of which together constitutes a substantial step toward the commission of the crime of murder. So it says essentially that by setting fire to the house that she was in, *that you attempted to kill her by your actions* and that you took a substantial step toward the commission of the crime of murder even though she did not die as a result of your offense. Do you understand the charge as its [sic] alleged in Count I.
>
> [Blauvelt]: Yes, sir.
>
> THE COURT: To that charge, how do you plead?
>
> [Blauvelt]: Guilty.

Appellant's Appendix at 57 (emphases added). With respect to Count II, the court stated that the charging information alleged that Blauvelt "did with the specific intent to kill Marilyn Shepherd, attempt to commit the crime of murder . . . ." *Id.* at 58. The court asked Blauvelt if he understood the charge, and Blauvelt answered: "Yes, sir." *Id.* The trial court explicitly informed Blauvelt of the element of specific intent. Based upon the record, we cannot say that reversal is warranted.

[20] With respect to Blauvelt's reliance on his statements in the presentence investigation report ("PSI"), we observe that the record does not contain a copy of the PSI. Even assuming that, as suggested by Blauvelt, he told his probation

officer that he had not intended to hurt either victim, again, we cannot say that reversal is warranted. In *Ross v. State*, which he cites, the Indiana Supreme Court held that "a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time." 456 N.E.2d 420, 423 (Ind. 1983). In *Moredock v. State*, 540 N.E.2d 1230, 1230 (Ind. 1989), *reh'g denied*, the Court addressed whether a trial court may accept a plea from a defendant who pleads guilty in open court but tells a probation officer that he did not commit the crime. The Court declined to extend the rule of *Ross* to protestations which occur outside the courtroom. 540 N.E.2d at 1231. The Court held that the defendant's statements to his probation officer that he did not attack the victim and that he was only trying to help her was not an adequate basis for post-conviction relief. *Id.*

[21] Based upon our review of the record, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *See Dewitt v. State*, 755 N.E.2d 167, 170-171 (Ind. 2001) (rejecting the defendant's argument that the post-conviction court erred by concluding that the defendant's decision to plead guilty was knowing, voluntary, and intelligent); *Mayberry v. State*, 542 N.E.2d 1359, 1360-1361 (Ind. Ct. App. 1989) (rejecting the petitioner's claim that the post-conviction court erred in failing to set aside his conviction based upon his guilty plea because he asserted his innocence in a presentence investigation interview), *trans. denied*.

B. *Ineffective Assistance of Trial Counsel*

Blauvelt asserts that his trial counsel was ineffective because he advised him to plead guilty to crimes which were factually unsustainable, failed to evaluate and address the consequences of Blauvelt's mental illnesses, and failed to present evidence of those illnesses at sentencing. Without citation to the record, he asserts that the evidence of an intent to kill Robin was weak at best, in part because she was protected by a closed door, and her injuries did not appear to have resulted from being targeted by the fire because they were focused on her face and neck, indicating that she was injured while facing the fire. He argues that competent counsel would have highlighted evidence of an intent to kill Marilyn was non-existent beyond her presence in the apartment, that evidence of his mental illness "should have established reasonable doubt regarding the purported intent to kill, and would have supported the plausibility of alternative motives for setting the fire such as a suicide attempt or simple property destruction," and that, "[u]nfortunately, [his] counsel appears to have viewed the mental illnesses only in the context of an insanity defense which was inapplicable." Appellant's Brief at 21. Lastly, he contends that it was ineffective assistance for his trial counsel to lead him to accept an agreement with no apparent resulting benefit where "[e]ven if he had been found guilty of attempting to kill Robin but not Marilyn, the resulting sentences for the arson and attempted murder would likely have run concurrently since they would have been essentially the same crime," that "it appears that one of the two would have had to have been vacated as constituting double jeopardy," and

that "[t]he attempted feticide charge violated double jeopardy since it was necessarily based on the same facts as the attempted murder of the pregnant mother." *Id.* at 23, 23 n.1.

[23] The State argues the post-conviction court could infer that Blauvelt's trial counsel would not have corroborated Blauvelt's allegations because he did not call trial counsel as a witness, that Blauvelt did not present any evidence of contrary intent that his trial counsel overlooked and presented only his self-serving testimony that he did not intend to kill anyone when he set the fire, and that he surmises that he set the fire as part of a suicide attempt. The State asserts that trial counsel did not overlook any available defense stemming from Blauvelt's mental health and points out that one of the court-appointed doctors strongly suspected that Blauvelt was feigning mental illness.[4] The State also argues that Blauvelt did not suffer prejudice because there was no reasonable probability of acquittal at trial and that trial counsel's representation at sentencing was not ineffective.

---

[4] The State cites the prosecutor's comments in which the prosecutor stated that Blauvelt was "evaluated by two mental health evaluators. Matt Oliver stated that, 'I strongly suspect that [Blauvelt] is malingering with respect to his reporting clinical problems in a means to mitigate the legal consequences of his actions.' Mr. Blauvelt was [inaudible] of lying to Mr. Oliver about his mental health status." Appellant's Appendix at 136.

Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second

guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[26] Because Blauvelt was convicted pursuant to a guilty plea, we must analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* categorizes two main types of ineffective assistance of counsel cases. The first category relates to "an unutilized defense or failure to mitigate a penalty." *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied*. The second category relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." *Id.*

[27] Blauvelt's claims of ineffective assistance based upon his trial counsel's failure to evaluate and address the consequences of his mental illness and failure to present evidence of those illnesses at sentencing fall under the first category. Because Blauvelt did not call his trial counsel as a witness at the post-conviction hearing, there is no evidence as to why counsel made the decisions he did. Thus, the court was entitled to infer that counsel would not have corroborated Blauvelt's allegations. *See Owens v. State*, 464 N.E.2d 1277, 1280 (Ind. 1984) (holding that the court was entitled to infer that counsel would not have corroborated petitioner's allegation of incompetency where petitioner failed to

produce the testimony of trial counsel and that "[w]ithout the benefit of counsel's testimony here, we will conclude that counsel's decision was a tactical judgment and not necessarily indicative of ineffective representation").

[28] To the extent Blauvelt argues that his trial counsel failed to argue his mental illness as a mitigator, we observe that Blauvelt does not cite to the record to support his argument that his mental illness was ignored or downplayed in either his initial brief or his reply brief.  In his statement of facts, Blauvelt alleges that he was eventually diagnosed at the jail with schizophrenia, depression, and an unspecified personality disorder.  However, he does not argue how his mental illness limited his function or explain the nexus between the illness and the crime.  Moreover, his trial counsel raised mental illness to some extent at the sentencing hearing.  Trial counsel asked Blauvelt's mother whether she had ever been aware or noticed any mental health issues with Blauvelt.  At some point, Blauvelt's mother testified:

> I did take him to a psychologist for several visits when he was about fourteen or fifteen, when I sensed that he just seemed so ill at ease.  I was told there was nothing wrong with him, that he was just [a] typical teenager, that [he] didn't have a good relationship with his father and, you know, the typical things.  I mean, a professional told me this.  If I just had any clue what these demons inside that he was fighting unsuccessfully, I would have had him committed, to get the treatment that he so desperately needs, but I didn't know and I'm going to pay for it for the rest of my life.

Appellant's Appendix at 132-133.  While Blauvelt's counsel did not specifically mention his mental illness as a mitigator, the prosecutor acknowledged the evidence presented by his mother by stating: "There's been a lot of talk either by

his mother today and in the presentence report that he does have some mental health issues." *Id.* at 136. At the sentencing hearing, the court stated Blauvelt was not precluded from raising his mental illness as a mitigator but rejected such a consideration and concluded that it was a carefully planned set of actions. We cannot say that reversal is warranted on this basis.

[29] Blauvelt's claim that his trial counsel was ineffective for leading him to accept an agreement with no apparent resulting benefit falls under the second category in *Segura*. To prove prejudice due to incorrect advice as to penal consequences, the petitioner may not simply allege that he would not have pled guilty. *Segura*, 749 N.E.2d at 507. The petitioner must instead "establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead." *Id.* "[S]pecific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea." *Id.* In analyzing a claim of incorrect advice as to the law, the focus must be on whether the petitioner proffered specific facts indicating that a reasonable defendant would have rejected the petitioner's plea had the petitioner's trial counsel performed adequately. *See Willoughby*, 792 N.E.2d at 564.

[30] To the extent Blauvelt claims that his trial counsel led him to accept an agreement with no apparent resulting benefit because of double jeopardy considerations, we observe that he does not argue that any statements by his trial counsel were erroneous or material to his decision to plead guilty. In the

argument section of his brief, Blauvelt does not assert that his trial counsel failed to discuss double jeopardy implications with him. Again, Blauvelt did not present his trial counsel's testimony at the post-conviction hearing. Thus, the court was entitled to infer that counsel would not have corroborated his allegations. Once again, we cannot say that reversal is warranted on this basis.

## *Conclusion*

[31] For the foregoing reasons, we affirm the post-conviction court's order.

[32] Affirmed.

Bailey, J., and Robb, J., concur.